## John Lamb v. David E. Hinman et al.

*Chancery records—Specific performance.*

The original minutes of oral testimony taken in open court in a chancery case, must not be removed from the files to be used as copy in printing the record, unless by an order of the Supreme Court. But in a case where they were so removed and were destroyed by the printer, the appellants who were not shown to have had any knowledge that they had been so used, were allowed, for the purpose of saving their rights, to file a copy of the evidence in lieu of the original.

A son agreed with his father to remove with his family to the latter's house, take care of the father and turn over to him annually a certain proportion of the crops, in consideration of all which the father was to deed to the son a certain parcel of land, which he promised to do, but did not. The only uncertainty related to the time at which the deed was to be given. *Held*, that the case was sufficient to sustain a bill for specific performance against the administrator and heirs at law of the father.

The reason why taking possession of land under an oral contract is such part performance of the contract as will sustain a bill for its specific performance, when payment of the purchase price is not, is that in the former case there is no certain basis for estimating damages for the breach.

Motion for leave to file a substituted return. Submitted October 5, 1880. Granted October 6, 1880.

*D. E. Hinman* and *Henry F. Severens* for.

*Edward Bacon* against.

MARSTON, C. J. An appeal having been taken to this court from the decree rendered in this cause, counsel for appellant, without any order from this court or special reason existing therefor, before return made, placed the original minutes of the oral testimony, which had been taken in open court, in the hands of a printer, to have the record printed, on his promise to save and return it; but, when printed, the original manuscript was then destroyed by the printer. Upon such a showing a motion is made for leave to file a copy of the evidence in lieu or as a substitute for the original destroyed. The motion is very reluctantly granted, and only to save the rights of the appellants, who do not seem to have had any knowledge of such use being made of the testimony. Such a use is wholly irregular and should not be permitted, and the granting of the motion in this case must not be taken as an approval of the course adopted, or relied upon as a precedent in cases hereafter arising.

The other Justices concurred.

Appeal from Berrien. Submitted April 14. Decided April 27.

SPECIFIC PERFORMANCE. Defendants appeal. Affirmed.

*Edward Bacon* for complainant. Taking possession of land and working it is such part performance of a verbal contract of sale as to entitle the person doing it to specific performance: *Faxton v. Faxon* 28 Mich. 160; *Twiss v. George* 33 Mich. 254; *Weed v. Terry* 2 Doug. (Mich.) 351; *Switzer v. Gardner* 41 Mich. 164; *Cilley v. Burkholder* id. 751; *Scott v. Bush* 26 Mich. 421; *Rhodes v. Rhodes* 3 Sandf. Ch. 281; *Lobdell v. Lobdell* 36 N. Y. 330; *Gillett v. Bowman* 43 Mich. 477; Story's Eq. Jur. § 761.

*Henry F. Severens* for defendant in error. The contract was not sufficiently definite to warrant specific performance: Browne St. Frauds, §§ 452, 492-3; *Gosse v. Jones* 73 Ill. 508; *Taylor v. Staples* 8 R. I. 170; *Williams v. Morris* 95 U. S. 444; *Wright v. Wright* 31 Mich. 380; *Jones v. Tyler* 6 Mich. 364; *Case v. Peters* 20 Mich. 298.

COOLEY, J. Specific performance is prayed in this case of an oral contract alleged to have been made by complainant with Hugh Lamb, his father, now deceased. The defendants are the administrator and heirs at law of Hugh Lamb.

The case made by the bill is that on or about October 12, 1872, Hugh Lamb owned a certain eighty-acre lot of land in the township of Weesaw, of the value of about $2400, upon which he lived alone; that he was then seventy-two years of age, and very infirm; that among his infirmities was an ungovernable temper which rendered it difficult for others to live with him; that he had been letting his land on shares and had not succeeded well in so doing; that he had no team, little live stock and few farming utensils; that complainant was then a married man, living with his wife and two children about a mile from his father; that his father went to see him, and after talking over his affairs and circumstances, entered into a verbal agreement with him in substance and effect, as follows: On the part of complainant it was agreed that as soon as suitable preparations could be made, complainant with his wife and family should remove to his father's dwelling-house on the land aforesaid, and live with him during the remainder of his life, and should give him suitable care and attention, and should farm the land, rendering to his father annually two-fifths of all the wheat and one-half of all the corn raised on the land, all to be delivered on the land, the wheat in the half bushel and the corn in the shock or row; that complainant should furnish the seed, farming utensils and team for use on the farm, and supply his father with suitable board, lodging, washing and mending, and on the part of said Hugh Lamb it was agreed

that he should pay annually to complainant seventy-five dollars, and let complainant have the south 40 acres of the land, and give him a good and sufficient deed thereof; that this agreement was fully performed on his part to the satisfaction of his father; that complainant took possession of the south forty as his own in July, 1873, and has since cultivated and improved the same; that his father often promised to give complainant a deed of said south forty, but neglected to do so, and died without having given a deed, in September, 1878, and that since his death the heirs at law and the administrator appointed to settle his estate refuse to recognize and perform the agreement; wherefore complainant prays the aid of the court.

The defendants answered, denying that Hugh Lamb ever made such an agreement, and the case was brought to a hearing on pleadings and proofs. We are convinced by the proofs that a contract substantially as set up in the bill was made by the parties, and that complainant has strong equities in his favor which should be recognized if no inflexible rules of law forbid. The evidence that proves the contract discloses little discrepancies in the understanding of particulars, but not such as to make us doubt the parties having agreed upon the terms of an arrangement as complainant now describes them.

If there is any doubt as to the precise terms of the contract, it concerns the time when the deed was to be given. The complainant seems to have expected his father would give him a deed without any great delay; but the agreement fixed no time; and as the retention of the title constituted the father's security for the performance by complainant, it was not unnatural that he should delay putting the security out of his hands. If the contract had been in writing, Hugh Lamb would have had the legal right to decline to part with the title so long as he lived; and it is no reason for declining specific performance of the oral contract that complainant had expected his father would so far confide in him as to make the deed in person instead of leaving it to be made

by his heirs. We think, therefore, that so far as proof of the contract is concerned, the case is sufficiently made out to answer the requirements of cases relied upon by defendants. *Case v. Peters* 20 Mich. 298; *Wright v. Wright* 31 Mich. 380.

But it is said there has been no such part performance as can take the case out of the statute of frauds. The most important act of part performance was the taking possession of the land, occupying and cultivating it during the father's life. But this it is said was not in fact the complainant's possession, but the possession of the father; so that on this branch of the case there is substantial failure to make out any recognizable equity.

The reason why taking possession under an oral contract is recognized as a ground for specific performance when payment of the purchase price is not, is that in one case there is no standard for the estimate of damages when the contract is repudiated, and in the other there is a standard that is definite and certain. A purchaser who takes possession of land under an oral purchase is likely in so doing to change very considerably—perhaps wholly—the general course of his life as previously planned by him; and if he is evicted on a repudiation of the contract, any estimate of his loss by others must, in many cases, be mere guess-work. The rule, therefore, rests upon the element of uncertainty, and not upon any technical ground of exclusiveness in the possession. And upon this point no case on its equities could be plainer than this. Complainant abandoned one home and made a new one in reliance upon the oral contract; occupied the land bargained for and cultivated it for six years in confidence that the contract would be performed; and it is not too much to say that the whole course of his subsequent life was probably changed in consequence. To deny relief under such circumstances for no other reason than that he did not occupy exclusively, would be to make the whole case turn upon a point in itself unimportant as affecting the real equities. The case is within *Kinyon v. Young* 44 Mich. 339.

The decree of the court of chancery was in favor of complainant, and it must be affirmed with costs.

The other Justices concurred.