JULIA L. PUTNAM v. MERCY TINKLER ET AL.

*Specific performance—Infancy—Laches.*

1. The power of the equity court to compel the specific performance of a parol contract to convey land, which has been fully performed by the vendee, is undoubted; citing *Twiss v. George*, 33 Mich. 253; *Kinyon v. Young*, 44 Id. 339; *Lamb v. Hinman*, 46 Id. 112; *Fairfield v. Barbour*, 51 Id. 57; *Welch v. Whelpley*, 62 Id. 15; *Taft v. Taft*, 73 Id. 502.

2. The failure of an infant to file a bill to enforce the specific performance of a parol contract for the conveyance of land to her father, which he fully performed in his life-time, will not prevent her doing so after arriving at full age; citing *Dragoo v. Dragoo*, 50 Mich. 575.

So *held*, where land was purchased by a father for his son, and the title taken in the father's name, who agreed · to convey to the son as soon as he paid the purchase price, which was paid by the son in his life-time, and after his death his father conveyed to a third party, who understood that the land was claimed by the son's widow for herself and infant daughter. The widow filed a bill against her father-in-law and his grantee to enforce the performance of the contract, but before any proofs were taken she quitclaimed the land to the grantee for a consideration paid her by her father-in-law, and surrendered possession to the grantee. She afterwards remarried, and lived near the land with her daughter, who, after attaining her majority, filed a bill for the specific performance of the contract, and her right to such relief was opposed on the ground, among others, that she had lived · near the land for many years while the defendant (said grantee) was occupying and improving it as his own, without ever asserting her claim, which ought not to be considered by a court of equity.

Appeal from Barry. (Hooker, J.) Argued October 8 and 9, 1890. Decided December 24, 1890.

Bill for specific performance. Complainant appeals from decree dismissing bill. Reversed, and decree entered for complainant. The facts are stated in the opinion.

*John C. Patterson,* for complainant.

*James A. Sweezey* and *Charles G. Holbrook,* for defendants.

CAHILL, J. The complainant filed her bill in the circuit court for Barry county, in chancery, against Adam Tinkler in his life-time to compel the specific performance of an oral contract for the purchase of the E. $\frac{1}{2}$ of the S. E. $\frac{1}{4}$ of section 23, of township 3 N., range 8 W., in Barry county, Mich., claiming that Adam Tinkler held the title in trust for her. The case was tried, argued, and submitted to the court below in the life-time of Adam Tinkler, who died before decree, and the suit was revived against his widow and heirs at law, who appear as defendants in this Court.

The complainant is the daughter and sole heir at law of Albert Henry Dodge, who died July 15, 1864, and the rights which she seeks to enforce in this suit were inherited from her father. The contract relied on is claimed to have been entered into between Horace Dodge, as party of the first part, and Albert Henry Dodge, complainant's father, as party of the second part, in the spring of 1860. It is claimed that it was fully performed by Albert Henry, in his life-time, except the payment of a small balance of the purchase price, which was paid, after his death, from the proceeds of a wheat crop growing at the time of his death, and which his father appropriated. It is claimed that in May, 1866, Horace Dodge, in disregard of his contract with Albert Henry, conveyed the land to Adam Tinkler, who, it is claimed, was fully apprised of the rights of complainant in such land as the heir of Albert Henry Dodge.

Complainant became of age on November 16, 1884, and this bill was filed September 11, 1886. The case was heard before the Honorable Frank A. Hooker, circuit

judge, who filed a written opinion, which is printed in the record, from which it appears that he found all of the material facts contended for by complainant established by the evidence, but held that a decree such as complainant asked would be inequitable under the circumstances, and dismissed complainant's bill. Complainant appeals.

I have read the record and briefs of counsel with great care, and have reached the following conclusions upon the points necessary to establish complainant's case:

1. That a contract, which, if in writing, would have been valid, was entered into in the spring of 1860 between Horace Dodge, the father, and Albert Henry Dodge, the son, by which it was agreed that Horace should buy the land in question, and hold the title until such time as Albert Henry should be able to pay the purchase price; that the latter was to have time to pay from the proceeds of crops raised by him on the farm; and that when the purchase price was paid Horace was to give Albert Henry a deed. This agreement is established by the testimony of Mrs. Thompson, complainant's mother, Orson Dodge, son of Horace, Elmira Benham, Seymour Andrews, Charles Andrews, and Peter Althouse, and is not disputed by any witness. It is also corroborated by many circumstances.

It appears that in the spring of 1860 Albert Henry Dodge, being then a minor, had become restless at home, and desired to go west; that his father and mother were much opposed to his leaving home, and told him that if he would remain they would buy a farm, and give him his time to pay for it from crops which he should raise upon the land. With this in view Horace and his son, Albert Henry, went to look at the land in question, which was owned at that time by Sherman Shattuck. At this time Albert Henry was engaged to be married to complainant's mother, and expected soon to be married. She went with

him, accompanied by his father and mother, to look at the land, and, all parties being satisfied with it, Horace negotiated with Mr. Shattuck for the purchase of it, saying that he desired it for his son, Henry. The price being agreed upon, Horace offered to pay a part down, and to take a deed to his son, Henry, who would give a mortgage for the balance. Mr. Shattuck objected to conveying the land to Henry, because he was not yet of age, whereupon Horace said he would take the deed in his own name and execute a mortgage back, and then he could deed to Henry when he had paid for the land. This was done, and immediately thereafter Henry began work upon the place. It was mostly new land, there being only a small clearing and a small log house upon it. The summer of 1860 was devoted to clearing land and getting it ready for crops. A small crop of potatoes and bagas was grown that season. In February, 1861, Albert Henry was married to complainant's mother, and went to live on the place. Before his death he had cleared about 30 acres, built fences, a log stable, dug a well, and set out an orchard. He also paid the taxes. In the spring of 1864 Albert Henry was seized with consumption, and died in July following. When he became unable to work, in the spring of 1864, he rented the farm to Perry Hewitt, who remained there about a year and until complainant's mother, after her husband's death, moved back, in the spring of 1865. She received from Hewitt a share of the crops as rent.

2. I am satisfied that the contract was fully performed by Albert Henry, in his life-time, not only by the payment of the purchase price, except a small balance of $30, which was paid soon after his death, but also by conforming to the wishes of his father in giving up his plans for going west, and in settling down on a farm near home in accordance with his desire. These facts

are abundantly established by the testimony of the witnesses already named and by Perry Hewitt. The evidence shows that crops of wheat were raised in 1862, 1863, and 1864, aggregating more than 600 bushels; that wheat in those years brought two dollars and upwards per bushel; that all of the wheat so raised was turned over to Horace towards paying for the place, except the small amount needed by Henry for his family and for seed. It was shown that the notes given with the mortgage to Shattuck were taken up by Horace, and by him handed to Henry as paid. These notes were produced at the hearing by Mrs. Thompson, former widow of Henry, who testified that her husband handed them to her when he received them, and that she had always kept them. It also appeared that at the time Henry lay sick in his father's house, and a few days before his death, he called his father to him and wanted him to give him a deed of the place. There were present at this interview complainant's mother and Mrs. Benham, and they testified that Horace, at that time, admitted that Henry had paid for the place except about $30, and that the wheat crop just then ready to be harvested would pay the balance and leave some for Henry. Charles Andrews testified that he had a conversation with Horace a few days before Henry died. He says:

"I talked with uncle Horace, at Henry's request, in regard to his having a deed, and he said: 'We are pressed with work now. Henry is not able to go down if he wanted a deed made. However, if Henry should be suddenly taken away, I will do by his wife and little one the same as though Henry had lived.'"

He further testified that he heard Horace say soon after Henry's death that the crop of wheat they had just threshed would finish paying for the place and have a little left. Seymour Andrews testified:

"I was there the day after Henry died. Mr. Dodge was feeling pretty bad, and he said : 'Poor boy. This is too bad. He has killed himself with hard work to pay for that place. This crop of wheat would have paid for the farm and left him some money.'"

Mrs. Benham testified that Henry died on Saturday; that she was at his father's house on the Friday before.

"As I came in I saw Henry crying, and I went up to him and I said, 'Henry, what's the matter?' His father was standing right by him, and his mother also, and his wife. Horace said to me that he wanted the writings done about that place; that was why he was crying. Horace told him not to worry; that everything should be done just as he had agreed with him. * * * He told the exact amount that was back on the place; but I can't recollect. I think it was between twenty and thirty dollars, and he said that the wheat crop that was then on the ground that Henry had put in would more than pay up for the place and all of Henry's indebtedness."

The contract, and its full performance by the vendee, being thus clearly established, the power of the court to compel a performance by the vendor is undoubted. Section 6183, How. Stat., provides as follows :

"Nothing in this chapter [the statute of frauds relating to conveyances and agreements as to land] contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements in cases of part performance of such agreements."

This power has many times been exercised by this Court in cases closely resembling this, as it was at the death of complainant's father. *Twiss v. George*, 33 Mich. 253; *Kinyon v. Young*, 44 Id. 339; *Lamb v. Hinman*, 46 Id. 112; *Fairfield v. Barbour*, 51 Id. 57; *Welch v. Whelpley*, 62 Id. 15; *Taft v. Taft*, 73 Id. 502. From this it follows that Albert Henry Dodge would have been entitled, had he lived, to have filed this bill against his father, or against Mr. Tinkler, his father's grantee, and to a decree

for a specific performance of the contract of purchase. Has the complainant the same right?

Upon this point it becomes necessary to examine some additional facts. I have said that in the spring of 1865, after her husband's death, the widow of Albert Henry moved back upon the place with complainant, then an infant child. Her husband's brother, Orson, then a boy of about 20, went with her, and during the summer worked the place. In the spring of 1866, and while complainant's mother was still living on the farm, Horace Dodge deeded the land to Adam Tinkler, a neighbor living about three miles distant. Adam Tinkler testified that no money was paid by him at the time the deed was delivered, nor for some time thereafter; that he had agreed to give $1,500 for the land, but that none of it was paid until after a settlement was made with the widow of Albert Henry, as hereinafter shown. He does not explain why no part of the purchase money was paid at the time the deed was delivered, and it must be assumed, in the absence of any explanation of so unusual an occurrence, that it was understood by him that the land was claimed by the widow of Albert Henry and her child, and agreed between himself and Horace that the purchase money need not be paid until some adjustment was reached. Soon after he obtained his deed he went to the land and began work. As soon as his presence there was discovered by Mrs. Henry Dodge she ordered him off, and, when he refused to go, sued him in trespass. Ten suits were commenced by her against him for distinct acts of trespass. About the time this trouble with Adam Tinkler began, the widow purchased, in her own name, an outstanding tax title, for which she paid $50, and there is some claim in the record that in her trespass suit she relied upon this tax title. But about

the same time, that is to say, on June 12, 1866, she filed a bill against Horace Dodge and Adam Tinkler in the circuit court for the county of Barry, in chancery, setting up the facts in regard to her husband's right to the land, substantially as claimed in this bill, and in which she made no claim under her tax title. She set up the further fact that she had been appointed administratrix of her deceased husband's estate. She set up the conveyance by Horace Dodge and wife to Adam Tinkler, but charged that Tinkler had, at the time of his purchase, notice of her claim and of the fact that she was in possession of the land; that Adam Tinkler had not paid any part of the consideration, but had intruded himself into and upon said premises, and undertook to assume possession thereof, which complainant refused to yield up and surrender; that summary proceedings had been commenced before a circuit court commissioner, at the suit of Horace Dodge against complainant to recover possession of the premises, which were still pending. The bill then prayed for the specific performance of the contract between Horace and Albert Henry Dodge, and that Horace Dodge and wife, or, if they had conveyed to Adam Tinkler, then that Adam Tinkler, be required to release and convey, by proper deed, the lands and premises described to complainant and Julia L. Dodge (who is the present complainant), the heirs at law and legal representatives of Albert Henry Dodge, deceased; and for general relief. The counsel for complainant in that bill appear as counsel for the defendants in this bill.

Defendants, Horace Dodge and Adam Tinkler, filed a joint and several answer, denying the material allegations in the bill, but before any proofs were taken a settlement was made between Mary Melissa Dodge, the complainant in that bill and the mother of present complainant, and Horace Dodge and Adam Tinkler, by which

Mary Melissa Dodge, for the consideration of $400, paid by Horace Dodge, executed a quitclaim deed on July 8, 1867, to Adam Tinkler, conveying the land in question. Following this agreement Mary Melissa Dodge moved from the farm, and Adam Tinkler went into possession, and has been in possession, personally or by his representatives, ever since. The widow of Albert Henry remarried soon after, and went to live with her husband on a farm near the land in question, where complainant lived until her marriage, in 1881.

It is insisted on behalf of the defendants that, whatever may have been the rights of complainant's father in this land, it would be inequitable to allow her, after the lapse of so many years, to recover this land, for the following reasons:

*First.* That the payment of the $400 to complainant's mother for her deed in 1867 must be considered as having been made, in part at least, in her interest. In support of this it was shown that complainant's stepfather, Lewis, at his death, bequeathed to her $200, and the inference is sought to be drawn that this bequest was made because complainant's mother had let him have that money. It is sufficient to say that the evidence fails to show any connection between the two transactions. If it did the rights of complainant would not be affected.

*Second.* It is said that Horace Dodge and Tinkler must have understood when they paid complainant's mother $400, and received her deed and possession of the land, that they were settling all conflicting claims and securing a good title to the land. If it was important, so far as complainant's rights are concerned, to know what they understood, it should be stated in that connection as a fact appearing in the record that the settlement was arranged between counsel for the respective parties; the present counsel for defendants representing Mrs. Dodge,

and Mr. Mills representing Horace Dodge and Mr. Tinkler. It is not to be supposed that the counsel thus engaged to look after their clients' interests were ignorant of the respective rights of complainant and her mother, or that they advised the parties that a deed from Mrs. Dodge would convey any interest which her infant child might have in the land as her father's sole heir at law. The widow had a homestead right, a dower right, and a tax title. Adam Tinkler testified that Mrs. Dodge claimed under a tax title, which was settled for. Acting, as these parties were, under the immediate advice of counsel, we must assume that they knew what they were buying, and paid accordingly.

*Third.* It was shown that there were matters of unsettled account between Horace Dodge and Albert Henry growing out of exchange of work, the payment of some store bills, the expenses of the latter's last illness, funeral expenses, etc. Standing to Henry's credit in such account was the fact that he spent some of his time after he became of age working for his father, and that the latter had and disposed of all the crops raised by Henry on his own place above that part retained for his own use. How this account stood the record does not disclose, and the scant showing on the subject does not justify the importance given to it by the circuit judge. To allow this circumstance to defeat complainant's right we must assume, without proof, that a balance was due to Horace from Albert Henry's estate which would have been a charge against this land, and would have justified Horace in refusing to perform his contract until he was paid. The proof is clear and convincing that the land was paid for. The evidence as to the state of their other accounts is lacking.

*Fourth.* It is said that complainant lived near this land for many years, and saw defendant Tinkler making

his improvements, and using the land as his own, without ever asserting her claim, and that her claim ought not now to be considered by a court of equity. Laches are not to be attributed to an infant. *Dragoo v. Dragoo,* 50 Mich. 575. The law assumes that complainant was ignorant of her rights during her minority. Nor can the neglect of her mother to act for her deprive her of any right under the statute. How. Stat. § 6022. Complainant succeeded to the right to enforce her father's contract. She had a right to sue Horace Dodge at law for damages for breach of the contract, or in equity to compel its specific performance. Before she attained her majority Horace Dodge had lost his property, and died, leaving no estate. If she is denied relief under her present bill, she is deprived of all remedy. We cannot, for the sake of guarding Mr. Tinkler or his estate from his own folly, refuse to extend to complainant the protection which belongs to every infant as the peculiar ward of the court.

The bill prays that an account may be taken of the rents and profits of the land during all the time complainant has been deprived of it, and that the defendant may be decreed to pay to her the amount justly found to be due. The proofs on this branch of the case are very meager, and do not afford ground for a decree. There is evidence of the annual rental value of the land, varying from $50 to $75 per annum. There is evidence also of taxes paid and of improvements made by defendant, the amount and value of which is left uncertain. The defendant was entitled, under his deed from Mary Melissa Dodge, to the possession of an undivided one-third part, that being her dower interest in the land. No reliance is placed here on the tax title. We do not feel authorized upon this record to more than decree that defendants hold the legal title to the land in question in trust for complainant, and to require them to

make conveyance and deliver possession thereof to her, as prayed in the bill, except as to the undivided one-third part, the possession and use of which defendants are entitled to during the life of the widow of Albert Henry Dodge, the mother of complainant, now Mrs. Thompson. If complainant is not satisfied to allow defendants' improvements and taxes paid to offset her claim for rent and profits for the undivided two-thirds of the land, she is given leave to apply to the circuit court for a reference to take proofs and state an account of such rents and profits, and of the improvements made and taxes paid by defendants, and report the same to that court for its action.

The complainant will recover the costs of both courts.

CHAMPLIN, C. J., LONG and GRANT, JJ., concurred. MORSE, J., did not sit.