TURNER *v.* BRADFIELD.[1]

SPECIFIC PERFORMANCE—CONTRACT TO CONVEY—EVIDENCE—SUFFICIENCY.

On a bill for specific performance of an alleged agreement by defendant's decedent to convey land to plaintiff if he and his wife would live with decedent and attend to her business, evidence examined and *held* sufficient to sustain a finding establishing the agreement alleged.

Appeal from Kent; Perkins, J.   Submitted October 19, 1904.   (Docket No. 55.)   Decided December 14, 1904.

Bill by Charles W. Turner against Thomas D. Bradfield and John E. Botsford, executors of the last will and testament of Sarah C. Turner, deceased, and others, for the specific performance of a land contract.   From a decree for complainant, defendants appeal.   Affirmed.

The complainant by this suit seeks the specific performance of a land contract alleged to have been made

[1]Rehearing denied May 12, 1905.

with his aunt Sarah C. Turner, now deceased. Defendant Salem T. Turner was the husband of Sarah. Defendants Burr and McKown are the nieces of said Sarah, and legatees under her will. Mrs. Turner died December 16, 1901. She had been married three times, but had no children. She married her cousin, defendant Salem, when she was 80 years of age and he was 70. Their marriage evidently was one of business rather than of sentiment. Mrs. Turner had a number of houses in the city of Grand Rapids to rent and look after. She was a shrewd, careful business woman; and, while she was in good health for a woman of her age, she undoubtedly realized that she needed some one to look after her business. Soon after the marriage she and her husband had trouble. She alleged that he was insane, and he was so adjudged, and sent to the asylum for a short time. On his discharge from the asylum he returned to Grand Rapids, but did not live with his wife. After their marriage he took charge to a considerable extent of her business affairs, until he was sent to the asylum. She desired to make arrangements with some one to live with and take care of her, and manage her affairs. Complainant, the son of her brother, was then living in Equality, Ill. She made a proposition to a man named Parker similar to that now claimed by the complainant, but he refused. Her niece also lived with her for a while, and left. Correspondence passed between complainant and Mrs. Turner, in pursuance of which he came to Grand Rapids. He alleges that a contract was made by which it was agreed that he should live with, care for, and help her in her business affairs as long as she lived, and that in consideration thereof she should deed to him the house and lot where Mrs. Turner then lived, and where it was contemplated that the three should live together. Subsequently, and for reasons unnecessary to state, the house and lot now in controversy were substituted for those originally agreed upon. Complainant was then a single man, but was about to be married, and it was a part of the agreement

that he should bring his wife with him, and the two live with and take care of Mrs. Turner.   The bill is long, and sets forth minutely the alleged circumstances of the complainant and Mrs. Turner, and the details of the arrangement, and what was done in pursuance thereof.   Answers and replications were duly filed, the case heard upon pleadings and proofs taken in open court, and a decree entered for the complainant.

*Charles Chandler* (*Francis A. Stace*, of counsel), for complainant.

*Frank L. Carpenter*, for defendants Burr and Mc-Kown.

*Burlingame, Belden & Orton*, for defendant Salem T. Turner.

GRANT, J. (*after stating the facts*).   It is established by the evidence and conceded by defendants that the complainant and his wife did, under some agreement, live with Mrs. Turner from November, 1900, until her death, as above stated.   The questions are those of fact.   The record is replete with evidence of an agreement on the part of Mrs. Turner to deed complainant the land in consideration for the services of himself and wife in caring for her and attending to her business affairs.   Whatever the agreement was, it is fully established that he carried it out.   She lived in contentment and happiness with the complainant and his wife, and she so expressed herself to her neighbors and friends and in letters.   In one letter, written in February, 1901, to a friend, she referred to Mr. Turner's dissatisfaction if she should deed the property to her nephew, meaning the property first agreed upon.   Dr. Bradfield, her neighbor, friend, and one of her executors, and a witness for defendants, testified that Mrs. Turner frequently spoke to him about a deed to complainant, and on only one occasion spoke of any conditions.   To others she stated that she had made a deed.   When she was

taken ill, she sent for a scrivener to draw a deed. The deed was drawn. After it was drawn she told the scrivener that she wanted to leave it with her papers, so that complainant would get it when she died. Upon being informed that delivery was necessary, and it being suggested that she deliver it in escrow to some third party, she said she would wait until a Mr. Botsford came, and would consult with him about it. She soon after became unconscious, and died without delivering the deed.

Counsel for defendants rely mainly upon a contract dated May 22, 1901, and to continue for one year, between Mrs. Turner and the complainant, in which it was agreed that complainant and his wife should make their homes with Mrs. Turner, and he should collect the rents, use the same in making repairs, expenses of household, etc. Complainant drew this contract, and, at his own suggestion, made a duplicate. Both were retained by Mrs. Turner. The terms of this contract are inconsistent with those now claimed by complainant. There is testimony to show, which the court below evidently believed, that this contract was executed for a particular purpose, and not to interfere in any way with the other contract. The attorney who drew it so testified. Defendant Salem had then returned from the asylum, and was making trouble for his wife. He desired to collect the rents and have a hand in her business affairs. There is testimony to show that this contract was made so that Mrs. Turner might show it to her husband, and relieve her from his annoyances by informing him that she had arrangements made with complainant. The conduct of Mrs. Turner, and the statements she made after this alleged contract, as well as before, are not consistent with the claim now made that this contract of May 22d represented the actual arrangement between the parties. It was perfectly legitimate for them to execute that contract to show to Mr. Turner, without in any manner changing the other. The court found that that was its purpose, and we think the evidence is sufficient to sustain the finding.

As above stated, the questions are those purely of fact, namely: (1) Was a contract made between complainant and Mrs. Turner for the conveyance of this land to him? And (2) was that contract carried out by him? The case is similar to *Lamb* v. *Hinman*, 46 Mich. 112.

The briefs cover 202 pages, taken up almost entirely with analyzing the testimony of the witnesses, and attempting upon the one side to show their discrepancies and unreliability, and upon the other to reconcile and explain them. To make a statement of the testimony of the witnesses, and the conclusions to be drawn therefrom, would make this opinion long and tedious, without benefit to any one but the parties interested. It is sufficient to say that we entirely agree with the conclusion reached by the court below.

The decree is affirmed, with costs.

The other Justices concurred.