HOGAN *v.* HOGAN.

1. SPECIFIC PERFORMANCE—CONTRACTS—CANCELLATION OF INSTRU-
MENTS—DEEDS.
   Where complainants brought suit for the specific perform-
   ance of an alleged oral contract between themselves and
   their father, providing that complainants should have all
   of his property, both real and personal, at his death, if
   they would remain at home and help pay off the mortgage
   on the farm, and other obligations, and also for the can-
   cellation of a deed conveying 80 acres of the land in viola-
   tion of said contract, and where defendant denied the
   making of the contract, evidence reviewed and *held,* suffi-
   cient to sustain the contract.[1]

2. SAME—BREACH OF CONTRACT—PART PERFORMANCE—INJUNCTION.
   Where complainants had performed their part of the contract
   for 13 years, and the further performance was made im-
   possible by the conduct of defendant, it was *held,* that
   complainants were entitled to a decree setting aside said
   deed and enjoining defendant from disposing of or incum-
   bering his real or personal property, except as his personal
   necessities might require.

Appeal from Ionia; Davis, J.   Submitted April 13,
1915.   (Docket No. 66.)   Decided July 23, 1915.

Bill by Daniel Hogan and others against Patrick M.

[1] As to right to specific performance or injunction during life-
time of one who has conveyed or is about to convey property in
violation of his agreement to leave the same, at his death, to the
complainant, see note in 18 L. R. A. (N. S.) 218.

   As to right of specific performance of oral contract to devise
or convey land in consideration of performing services or furnish-
ing support, where no possession is taken, or improvements made,
see notes in 15 L. R. A. (N. S.) 466; 38 L. R. A. (N. S.) 752.

   As to specific performance of contract to leave property in
consideration of services or support, see note in 44 L. R. A.
(N. S.) 733.

Hogan and another for the specific performance of an oral contract. From the decree entered, both parties appeal. Modified and affirmed.

*George E. Nichols* and *Frank C. Miller* (*A. R. Locke,* of counsel), for complainants.

*Hawley & Eldred,* for defendants.

BROOKE, C. J.   The complainants in this cause are three of the children of the defendant, Patrick M. Hogan. The other defendant, Dennis J. Hogan, is a fourth child of Patrick M. Hogan. Besides the three complainants and the defendant Dennis, there were four others, as follows: Bridget, born in 1871, now dead; Margaret, born in 1874, now a widow; James, born in 1875; and Mary, born in 1882. The three complainants were born, respectively, Daniel in 1881, Katherine in 1885, and Patrick in 1886.

The family history is somewhat peculiar in that, of the eight children, only three were ever married— Bridget, Margaret, and Dennis. Bridget being dead, five of those now living remain unmarried, and Margaret, as before stated, is now a widow. Defendant Patrick M. Hogan, with his wife and family, lived upon a farm in the township of North Plains, in Ionia county, consisting of about 150 acres. His wife died in May, 1898. His elder children, Bridget, Margaret, and James, left home at different dates, and when James started for himself his sister Mary went with him as housekeeper. There remained at home, of the children, defendant Dennis and complainants Daniel, Katherine, and Patrick. This was the situation in May, 1901.

The financial situation of defendant Patrick M. Hogan, in April, 1901, appears to have been as follows: He was the owner of about 150 acres of land, and he was indebted in the sum of approximately $5,000; a

portion of this indebtedness growing out of a protract-
ed lawsuit which he had carried on with one O'Connor
for two or three years prior thereto. While the rec-
ord does not conclusively establish the fact that at
that time Patrick M. Hogan was insolvent, it does
show that he was largely indebted and was not pos-
sessed of a very large amount in excess of his obliga-
tions. He was at that time (May, 1901) 67 years of
age, somewhat crippled, and unable to perform hard
menial labor. Complainants were then, respectively,
aged, Daniel, nearly 20 years; Katherine, about 16
years; and Patrick, about 14 years. It appears that
at this time (May, 1901) Margaret was about to leave
home and get married. It is the claim of the com-
plainants that a consultation was then had in the na-
ture of a family conference at which were present com-
plainants Daniel, Katherine, and Patrick, together
with Margaret, Mary, and Bridget, and the defendant
Patrick M. Hogan. Complainants claim that upon
that occasion complainant Daniel told his father that,
in the situation that then existed, there appeared
to be nothing to induce him to stay at home, and
that it was his intention to go out and work by the
month. Daniel himself testifies that he intended to
stay with his father until he was 21 years of age, and
so stated at the time of the conference. Being advised
of the intention of Daniel, it is the claim of complain-
ants that the defendant Patrick M. Hogan agreed with
the three complainants that if they would stay at home
and help him pay off the mortgage upon the real estate,
and his other obligations, at his death they should have,
not only the real estate, but such personal property as
might be accumulated. Bridget O'Mara being dead,
of those then present at the interview there remain
complainants Daniel, Katherine, and Patrick, besides
Mary and Margaret, and the defendant. The three
complainants and their two sisters, Mary and Mar-

garet, testify to what their father said upon that occasion. While they use slightly different language in expressing the agreement which it is alleged was entered into on that day, there is no disagreement as to the basic fact that an agreement was made and that its tenor was as above stated. Added to that is the testimony of the other son, James, who had left home at the age of 19, who says, referring to conversations he had with his father:

"He always claimed they (complainants) were working for themselves, and what he had would be theirs."

It appears, and the record discloses, that in 1902 James purchased the so-called Fox farm—a farm of 80 acres lying near to or adjoining the home farm. He testifies that he purchased it for his brothers, the complainants Daniel and Patrick, and that he paid down upon the purchase price the sum of $1,000, $500 of which he himself furnished, and $500 of which was raised upon his note, signed also by his father. He gave a mortgage of $2,000 on the property, which completed the purchase price. He claims to have paid the interest on this mortgage up to the year 1909, when he deeded it to his father, defendant Patrick M. Hogan. Explaining the fact that he deeded this farm to his father, instead of his brothers, James testified that:

"The boys and I talked it over different times. They told me any time father wanted it to let father have it; let it go in with the rest."

The defendant Patrick M. Hogan absolutely denied the making of the contract in question. In his answer, however, he says:

"This defendant, further answering, denies: That said complainants are entitled to the relief, or any part thereof prayed for, in said bill of complaint. That, while such is the case, nevertheless this defendant has at all times been willing and is now willing, and hereby

offers, to compensate said complainants liberally and fully for all services they have ever performed upon said farm or for the use and benefit of this defendant since they each and severally arrived at the age of 21 years."

Some time prior to the 1st of January, 1914, the relations between the complainants and the defendant Patrick M. Hogan appear to have become somewhat strained, and on the 20th day of December, 1913, the defendant Patrick M. Hogan deeded the Fox farm to his son Dennis J. for an expressed consideration of $3,000. Some time either shortly before or shortly after said transaction, the defendant Patrick M. Hogan took up his residence with defendant Dennis J. Hogan, and on January 7, 1914, complainants filed their bill of complaint herein. They pray for specific performance of their alleged contract with their father Patrick M. Hogan, and that the deed made by him to his son Dennis J. Hogan may be set aside and canceled. The learned circuit judge who heard the case filed no written opinion, but a decree was entered containing the following language:

"The court having taken the same under advisement, and after due consideration, did adjudge and determine, and does hereby find and determine, that no agreement upon which a specific performance could be compelled and the various parties be granted the equities belonging to them has been alleged or proven, and, upon any agreement of either party claimed by them to have been made, there can be no decree for specific performance.

"The court further finds and determines that complainants have strong equities, and that each have for several years, both before and since their majority, rendered very laborious services for said defendant, Patrick M. Hogan, and for which services so rendered for him by said complainants he has derived large profits and been greatly benefited, and for which he has from time to time promised to pay them, and for several years last past has stated to them that he

would reward them liberally for the services so rendered by them and each of them."

An award was provided to the complainants in the sum of $10,500, but specific performance was denied. From this decree both parties appeal.

On behalf of complainants it is strenuously urged that the circuit court should have determined, under the testimony, that the contract, as alleged, was entered into between the complainants and defendant Patrick M. Hogan; but, in the event that it is determined that the circuit court was right in finding that no such contract was entered into, complainants claim that the allowance of $10,500 is too small by several thousand dollars. Counsel for complainants base their argument on this branch of the case upon the assumption that in May, 1901, when the alleged contract was entered into, defendant Patrick M. Hogan was possessed of property of value to an amount of not more than $6,000 in excess of his liabilities. The record disclosed that, at the time of the hearing, he was possessed of real estate, including the Fox farm, valued at $17,500; personal property, including the farm implements, valued at about $4,000; and cash on hand to the amount of $2,500—a total of $24,000. They claim on behalf of complainants, and we think the record fairly shows, that this increase (of $18,000) in the value of the estate of Patrick M. Hogan during the 13 years which elapsed between the making of the contract and the date of the filing of the bill, was due in a very large measure to the energy and industry of the complainants. Some portion of it is undoubtedly attributable to unearned increment.

The learned circuit judge having failed to file an opinion in the case, we are not advised of his reasons for denying the relief prayed, except as they may be inferred from the decree itself. Taking the testimony of all the parties as it appears in this record, we have

no hesitation in reaching the conclusion that the making of the alleged contract was proven by the overwhelming weight of the evidence. In reaching this conclusion, we do not lose sight of the fact that the three complainants who testified to the contract were vitally interested in its establishment. They had, however, no greater interest in maintaining it than the defendant Patrick M. Hogan had in destroying it, so that confining consideration of the case to the parties alone, and assuming all the parties to be of equal credibility, a court should without hesitation hold that the complainants have maintained the burden of proof. But the matter does not rest here. The version of the contract given by complainants received the strongest confirmation through the testimony of their sisters Mary and Margaret, who were present at the time it was alleged it was made, and who must be held to have been testifying against interest when they gave evidence in support of the contract. This is likewise true of the testimony of James, who, while not present at the time the contract was made, swears that he became aware of it soon after, and spoke of it with his father, the defendant Patrick M. Hogan. We believe, then, that the contract was made as alleged.

Starting with this fact in mind, and remembering that the relations between the complainants and their father Patrick M. Hogan had become so strained as apparently to preclude their continued joint residence upon the farm in question, what relief should be granted complainants?

Defendant Patrick M. Hogan is now 81 years of age. If he were now dead, the case would, of course, present no difficulty under previous decisions of this court. *Twiss* v. *George,* 33 Mich. 253; *Lamb* v. *Hinman,* 46 Mich. 112 (6 N. W. 675, 8 N. W. 709) ; *Carmichael* v. *Carmichael,* 72 Mich. 76 (40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528) ; *Taft* v. *Taft,* 73 Mich. 502 (41

N. W. 481) ; *Bird* v. *Pope,* 73 Mich. 483 (41 N. W. 514) ; *Putman* v. *Tinkler,* 83 Mich. 628 (47 N. W. 687) ; *Kleinow* v. *Kleinow,* 126 Mich. 365 (85 N. W. 1134) ; *Howe* v. *Benedict,* 176 Mich. 522 (142 N. W. 768).

The refusal of the defendant Patrick M. Hogan to further reside with the complainants, whether justified or not by their conduct toward him, obviously makes it impossible for them to further perform their part of the contract. This fact, however, should not deprive them of the fruits of 13 years of hard and unremitting toil. Nor do we think that to grant complainants the relief prayed will work any hardship to defendant. So long as he lives he has the right to control for his own purposes, not only the personal property, but the real estate. It is only at his death, when his necessities are at an end, that the contract steps in and disposes of what remains, according to its tenor. The restriction upon his power of alienation was one of his own making and was for a valuable consideration, which has been, so far as is possible, performed by the complainants greatly to his advantage.

We think a decree should be entered in this court providing as follows:

(1) The deed from defendant Patrick M. Hogan to Dennis J. Hogan should be set aside and held for naught.

(2) Defendant Patrick M. Hogan should be perpetually enjoined from aliening or incumbering, except as his personal necessity might require, any of the lands mentioned in the pleadings.

(3) The personal property, including the cash on hand, and now in the possession of defendant Patrick M. Hogan, belongs to the complainants, subject to the right of Patrick M. Hogan to the use of such portion thereof as is necessary for his proper maintenance and support.

(4) Patrick M. Hogan is entitled to the immediate possession of the personal property upon the farm and the farm itself during his lifetime, and such possession must be surrendered by the complainants upon his demand.

(5) Upon the death of Patrick M. Hogan, said real estate and such personal property as has not been used and consumed by said Patrick M. Hogan, for his proper maintenance and support will become the absolute property of the complainants.

(6) The complainants to recover costs of both courts to be taxed.

KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.