WILLIAM R. SHAFTER ET AL. v. WALTER HUNTINGTON ET AL., ADM'RS FOR HUGH M. SHAFTER.

*Trusts in land by parol—Joint heir's deed.*

1. Trusts in land for the benefit of third persons cannot be established by parol understandings with the grantee. How. Stat. § 6179. So *held*, where, for the purpose of settling the estate of an intestate who left two children only, his daughter quitclaimed a part of it to her brother, and the latter, with his sister's consent, quitclaimed other lands to her husband on a verbal understanding that he should hold the property for the benefit of their children, whereas, instead of doing so, he mortgaged it for his own.

2. A voluntary conveyance without consideration cannot raise a resulting trust in favor of persons for whom the grantee agrees, by parol, to hold the property.

3. A deed from a joint heir conveys his undivided interest only.

Appeal from Kalamazoo. (Mills, J.)   Jan. 24.—April 16.

BILL to cancel mortgage. Complainants appeal. Affirmed.

*Charles S. May* for appellants.

*Dallas Boudeman* for defendant Huntington.

CHAMPLIN, J. Complainants allege that they are the heirs at law of Eliza Shafter, (their mother,) who died February 24, 1864; that said Eliza was the daughter of one Matthias Sumner, and the wife of Hugh M. Shafter, (complainant's father;) that Matthias Sumner died intestate in 1844, leaving as his only heirs the said Eliza and one Alonzo B. Sumner, being at the time of his death seized of the real estate in controversy; that no administration was ever had on the estate of Matthias Sumner, but by agreement his estate was divided between his two children, Eliza giving a quitclaim deed to Alonzo of a certain part of said real estate, and Alonzo giving in return a quitclaim deed of another part of said real estate, (being that which is in controversy,) to said Hugh M. Shafter, at his instance, request and direction, without any consideration from him, and against the real and expressed wish of said Eliza; that at the time said quitclaim to Hugh M. was executed, it was well understood by said Hugh M. that the said land really belonged to his said wife Eliza; that said Hugh M. and Eliza continued to live on said land until Eliza's death, in 1864, and that since that time Hugh M. has continued to remain on said land under a claim of tenancy by curtesy, not disputing that said land equitably belonged to Eliza at the time of her death; that on January 6, 1876, said Hugh M., disregarding the rights of complainants, made on said premises a mortgage to Walter Huntington, defendant, on which was claimed to be due, at time of filing the bill, $1623.59, and that said Huntington, well knowing the premises, was at the time of filing the bill, proceeding to foreclose his mortgage by advertisement; and that if said real estate be sold under said sale it would be against the just rights of complainants, and they would suffer irreparable wrong and hardship.

The bill prayed that the quitclaim given by said Alonzo

B. Sumner to Hugh M. Shafter might be destroyed, (said deed being made July 21, 1849, and recorded August 7, 1849, in the register's office, Kalamazoo county,) and that the sale of said land by Huntington on his foreclosure might be perpetually enjoined, and that a temporary injunction issue during the pendency of the suit, and also praying for general relief. A temporary injunction was issued on filing of bill, (May 11, 1881,) but was dissolved on coming in of Huntington's answer. His foreclosure proceeded and a sale was made; the time of redemption expired. He received a deed of conveyance under the foreclosure.

The defendant Huntington filed an answer and supplemental answer, the substance of which was that defendant did not admit the allegations contained in the bill as to any interest of complainants in the real estate, and denied that they had any. He did not admit the ownership of Matthias Sumner, but alleged that Hugh M. Shafter was the owner of the land when he gave the mortgage to defendant, and that defendant actually loaned him $1000 thereon, believing that he owned the land. He denied that Hugh M. Shafter had possession of the land under any claim of tenancy by curtesy, but as absolute owner; that he had already occupied it for such length of time that any cause of action by complainants would be barred by the long delay; that he had foreclosed his mortgage and obtained a deed, and had also purchased a tax deed upon the premises, and was in possession and claiming title thereunder, and that his title was absolute. He also denied the other allegations of the bill, and added a general demurrer clause. After the bill was filed Hugh M. Shafter died, and defendant Russell G. Smith was appointed administrator, and the suit revived in his name. The record does not show any answer or other pleading, either by Hugh M. Shafter or the administrator, nor the entry of any order taking the bill pro confesso by either of them.

We do not think the proof sustains the charge of complainants' bill, that the deed from Alonzo B. Sumner to Hugh M. Shafter was obtained by him against the real and

expressed wish of the mother of complainants. The testimony shows that Matthias Sumner died in 1845 intestate, leaving as heirs at law two children, Alonzo B. Sumner and Mrs. Hugh M. Shafter ; that at the time of his death he was the owner in fee and seized of the real estate described in complainants' bill; that no administration was had of his estate, but by an amicable arrangement between the heirs a division was made of the land, and Mrs. Shafter deeded to her brother her interest in a portion ·of the real estate, and he agreed to deed to her the remaining portion, but which was finally conveyed to Hugh M. Shafter. Why this was done appears from the testimony of Alonzo B. Sumner. He says that

"Mr. Shafter insisted on his quitclaiming the east part of the farm to him instead of his wife, and it was so executed. Mr. Shafter said in that conversation in regard to this division that he did not want the land for himself at all; simply wanted to preserve it, and take care of it for the benefit of his children and Mrs. Shafter's. He said that if I quitclaimed to Mrs. Shafter her undue religious zeal would perhaps induce her to appropriate that land to some charitable purpose, missionary enterprise, or something of that kind, and to secure it to the children he thought it was necessary that the title should be in his name; that he proposed to hold it in trust for his children. This settlement was delayed considerable time on that point. I objected to deeding it to him; I was willing all the while to quitclaim to my sister, but not to Mr. Shafter. Mr. Shafter kept a continual annoyance going in the family and among the relatives, between himself and his wife and me, over the title of that land, insisting that I should convey it to him. I did finally, after resisting his importunities considerable time. Mrs. Shafter told me that she could not bear any more annoyance over that land; she had rather have it sunk where nobody could get it, than to have that annoyance continue any longer; and she said if I was willing to do so she desired I should deed it to her husband instead of her, for the sake of restoring peace in the family.

*Question.* What did she say as to whose it was, or about the children, if anything ?

*Answer.* I don't recall that she said much about the children, but he said like this : that he was alive, owned a ·large

farm there unincumbered, and that it could not possibly make any difference to those children whether the descent of this land came through his name or through the mother's name; that he should simply hold it in trust for them, and they would have it ultimately.

*Q.* Was that the arrangement she consented to?

*A.* That was the arrangement she consented to.

*Mr. Boudeman.* I object to that question as calling for a conclusion.

*Q.* What did she say about it at the end?

*A.* Well, I think she expressed the opinion that it prob-ably would make no difference to the children whether it was in her name or her husband's; that the children would ultimately get it, and therefore on those grounds she consented to my deeding it to her husband; and, at the time the deed was executed, Mr. Shafter and his wife and myself and wife were together at the office of Esquire Simmons, who did the conveyancing.

*Q.* What was said there at the time the deed was made?

*A.* I requested Esquire Simmons to make a trust deed from me to Hugh M. Shafter for the benefit of his children. Mr. Shafter said that would be satisfactory to him,—he was willing that should be done; but Mr. Simmons had no blank suitable for that kind of conveyance, and the matter of Mr. Shafter's holding it in trust for the benefit of those children was talked over there in the justice's office. Mr. Shafter said it could make no possible difference in regard to what kind of deed was executed, and Simmons remarked that the children would inherit this land from their father as well as from their mother, and it would descend to them ultimately; and finally Mrs. Shafter consented. Rather than to have the thing postponed again to a still further delay, annoyance and vexation over it, she consented there should be a deed made direct quitclaiming to Hugh.

This testimony shows quite conclusively that the conveyance was made to Mr. Shafter by the consent and direction of Mrs. Shafter. The consideration for the deed was furnished by Mrs. Shafter, and consisted of a deed of her undivided interest in the land conveyed to her brother for the purpose of settling the estate; and the question arises—conceding that the land was conveyed to Hugh M. Shafter by an absolute deed, without specifying any trust, but with the parol agreement that he should take the legal title and

hold it in trust for the benefit of the children, of himself and Mrs. Shafter after his death, and the conveyance was made by the express consent and direction of Mrs. Shafter —whether, under such circumstances, the trust is such as can be enforced in behalf of the children in a court of equity.

Complainants occupy no better position in this respect than they would had the deed been made by Alonzo B. Sumner to their mother, and she had thereupon executed the deed to their father upon the parol trusts shown in the testimony. It would then have been a mere voluntary conveyance, absolute in form, but under a parol trust that he should hold the title during his life, and, on his death it should descend to their heirs, the complainants. Now, had he conveyed the land in his life time, in contravention of the parol trust, to one having no notice of the trust, would the complainants be entitled to relief? The fact that the conveyance was made without consideration, and was entirely voluntary, would not raise a resulting trust in favor of Mrs. Shafter or complainants. *Jackson v. Cleveland* 15 Mich. 94.

Could it be shown by parol evidence that the deed was made subject to an express trust in favor of the children of the grantor and grantee?

By How. Stat. § 5563, (Comp. L. § 4114,) all trusts are abolished, except such as are authorized in the chapter relating to uses and trusts. Trusts arising or resulting by implication of law are saved in express terms, and express trusts are authorized for several purposes, and among them, for the beneficial interest of any person or persons, when such trust is fully expressed and clearly defined upon the face of the instrument creating it, subject to the limitations, as to time, prescribed in the statute.

How. Stat. § 6179, declares that no estate or interest in lands, other than leases for a term not exceeding a year, *nor any trust or power over or concerning lands, or in any manner relating thereto,* shall be created or declared unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating or declaring the same.

Since the passage of the foregoing enactments in 1846 no

express trust has ever been allowed to be engrafted by parol on a conveyance, but has uniformly been held to be void. *Trask v. Green* 9 Mich. 366; *Groesbeck v. Seeley* 13 Mich. 345; *Newton v. Sly* 15 Mich. 396; *Brown v. Bronson* 35 Mich. 415; *Palmer v. Sterling* 41 Mich. 220.

At the time the deed was executed to Hugh M. Shafter there was no deed or conveyance in writing subscribed by the party creating or declaring the trust; and it is equally clear that no trust was raised by act or operation of law. It is needless, therefore, to pursue the investigation further. It can make no difference in the result whether defendant Huntington had or had not notice of the parol agreement under which the land in question was conveyed to Hugh M. Shafter. He was the owner of the legal title to that portion of the land conveyed to him by Alonzo B. Sumner, and it was not burdened or incumbered with any valid trust in his hands.

The bill is framed and the relief sought upon the supposition that the whole title to the land passed to Hugh M. Shafter by the deed from Alonzo B. Sumner. It is apparent, however, that such was not the case. The title to this parcel descended, by virtue of the statute, in equal shares to Alonzo B. Sumner and Mrs. Eliza Shafter, and the quitclaim deed from Sumner to Mr. Shafter only conveyed to him an undivided half, the title to the other half remaining in Mrs. Shafter, and upon her death descended to her children. For obvious reasons, no relief can be granted complainants in this suit based upon this fact.

Neither do we consider it proper to pass upon the questions of adverse possession or the validity of the tax title, as, under the views we have taken in the disposition of the case, they are quite immaterial.

The decree is affirmed.

The other Justices concurred.