56 207
58 275
63 313
56 207
86 514

GEORGE D. BULEN v. JOHN H. GRANGER.

*Resulting trusts—Proof of payment—Explanations in rebuttal—Prima facie evidence—Unfair discrimination by trial judge.*

1. Since the abolition of resulting trusts in Michigan, one who conveys land to his wife or any other relation, is in no better position for treating the transfer as creating a trust than any one else would be; if he meant the transfer as a gift, and not as a sale, no debt arises on the part of the transferee, and as against him the grantor can neither set off the value of the land nor sue for it.

2. Payment of a bill should be shown by the person who paid it, or by some one who knew the fact, and not by testimony that the witness had caused it to be paid.

3. Where the prima facie showing on which plaintiff is entitled to rest, does not involve explanations that would cover other matters introduced by the defence, and not foreign thereto, there is no reasonable objection to allowing such explanations whether technically rebutting evidence or not.

4. It is not error for a court to speak of a paper as prima facie evidence if it is so, unless the remark is given farther force and allowed to exclude evidence against its conclusiveness.

5. It is unfairness to a litigant warranting reversal for the trial judge to permit one party in testifying to make scandalous and irrelevant re-

marks without rebuke, while he sharply reprimands the adverse party for similar remarks, and strikes out his testimony on his own motion.

Error to Wayne. (Jennison, J.) Jan. 23.—Jan. 28.

ASSUMPSIT. Defendant brings error. Reversed.

*Henry M. Cheever* for appellant, cited as to arbitrary conduct on the part of the trial judge: *Scripps v. Reilly* 35 Mich. 387; *Cronkhite v. Dickerson* 51 Mich. 177; *Wheeler v. Wallace* 53 Mich. 355, 364.

*Levi T. Griffin* (*Griffin, Dickinson, Thurber & Hosmer*), for appellee.

CAMPBELL, J. Bulen, as assignee of Millie M. Granger sued Granger for certain debts for money advanced by Millie M. Granger to defendant, who was once her husband, and from whom she obtained a divorce. There was proof of her advances, but defendant sought to defend partly on the ground that he had conveyed considerable property to her without any valuable consideration, which he insisted should be regarded by way of defense or reduction. Judgment passed for plaintiff, and errors are assigned upon various rulings on trial.

As our statutes have abolished the old doctrine of resulting trusts, a person who deliberately conveys land to a wife or other relative stands in no better condition as to enforcing such a trust than any one else, and if a gift and not a sale was intended, he can no more set off its value than he can sue for it. No debt arises from such a transaction.

It was not error to hold that testimony of defendant that he did not pay a bill in person but caused it to be paid was inadmissible, and properly stricken out. The person who made the payment or some one who knew the fact, should have been called to prove it.

Some bills having been produced receipted, and testimony having been given by defendant upon furnishing money to his wife, and upon methods of drawing it from the business and other matters of pecuniary dealings, Mrs. Granger was allowed to be recalled, and explain the payments

made by her. Whether technically rebutting evidence or not, there was no reasonable objection to allowing such explanations, which were not foreign to the defense and which were not called for on the opening of the case, when, until attacked, plaintiff could properly rest on a prima facie showing.

We do not see any error in what was said by the court about a paper being prima facie evidence. It is not claimed that the paper in question was not prima facie evidence of payment, and calling it plain prima facie evidence could do no harm, so long as it was given no further force, and was not made to exclude evidence against its conclusiveness.

The circuit court was not wrong in striking out scandalous and irrelevant answers and remarks on its own motion or when objected to; and it could not be error to decline striking out remarks not objected to when made, as improper, merely as offsets to other things afterwards thrown out as impertinent and offensive. It is evident that the former spouses had considerable feeling and more or less sharp language was indulged in, which was always rejected when objected to at the time. It is not unlikely that seeing the parties and their manner, and hearing their remarks, language which seems similarly offensive on paper may not have appeared to the court at the time equally irritating. Courts cannot always prevent exhibitions of bad temper, and error cannot be alleged on their omission to do so, unless notice is called to it at the time the offense is given.

I cannot concur in the reversal.

COOLEY, C. J. I agree in what is said by my brother Campbell in regard to the specific rulings of the circuit judge, but I think the defendant did not have a fair trial.

The action was upon a claim assigned to the plaintiff by the defendant's divorced wife. The claim purported to be for money which she had loaned him while they lived together. The woman was a witness for the plaintiff, and while on the stand the defendant's counsel endeavored to show by cross-examination that the money for which she had

obtained an acknowledgment from her husband was really his money, and put the question to her: "Was not the $350 cash which he gave you?" She replied "It paid for my clothes a good many years ago." Counsel then asked whether when the written acknowledgment was given defendant was not up stairs sick; to which she replied: "I don't think he was sick." Counsel further asked: "Was he drunk, Mrs. Granger?" She replied: "Well, I don't think I need answer all these questions." The court then interposed with the remark, "Don't let us bring too much scandal into this case." The woman then added: "I cannot tell it all; I told it so often, I cannot." Counsel further asked: "What was the matter with him?" She replied: "I don't think he was sick; he had the devil in him all the time, threatened to kill me and everything, and still I let him have the money to keep up the reputation of the store." This irrelevant and scandalous remark passed without rebuke, and counsel failed to obtain an answer to his question, whether his client was intoxicated when the paper was signed, which might have been important.

Subsequently the defendant took the stand and was examined and cross-examined very minutely in regard to business transactions with his wife. In answer to a question by plaintiff's counsel as to how his wife raised a certain sum of money he replied, "I don't know; she told me so many lies I would not believe her." No one took any notice of this answer at the time, but after several more questions had been put and answered, the judge said: "I think it was an improper reply, what the witness said about lies; it was not responsive, and ought to be stricken out." Defendant's counsel suggested that the answer of the woman that he had the devil in him be also stricken out to keep the other company, but the court replied: "You pressed her, and she stated he had the devil in him." In this statement the court was in error. There was no unreasonable pressing of the witness by questions; nothing, so far as the record shows, that was not entirely proper.

Later on the witness was testifying to a receipt, and there

was another in the case which the defendant claimed was untrue. The receipt he was testifying to being handed him he said, "That is the one. That other receipt there, gentlemen, amounts to nothing; that is only a trumped-up thing." The court immediately interposed: "Wait a moment; if you make any such answer as that again, I will have to commit you. That will be stricken out about a trumped-up thing; it is an improper statement. That is the second or third statement of this kind that has been made. He said his wife told a pack of lies, or something that was highly improper, and I waited for somebody to speak of it and finally ordered it stricken out. Now for him to say it was a trumped-up thing, it is an improper statement. There is no evidence of it; it is an improper expression; it should not be used in the court-room, and I will not permit it." *Counsel for Defendant.* "I suppose the witness would have the right to say, when I asked him, if it was a receipt for that bill?" *The Judge.* "Do you justify the witness in saying it is a trumped-up thing?"

This question would seem to imply censure of the counsel, and must, I think, have been so understood. But if, as the defendant claimed, the receipt was in truth a false one, he had a right to bring out the facts, and if he could testify to them of his own knowledge, he had a right to do so. Of course he should keep within the limits of proper language, but this record discloses no such grave departure at this point as to call for a threat of punishment.

I cannot resist the conclusion that the court exhibited this defendant to the jury as deserving of severe condemnation for the manner he had testified, while overlooking and indeed justifying conduct at least equally reprehensible on the other side. The effect must necessarily have been to put him at a disadvantage before the jury and to prejudice them against him. This the judge did not intend, but it was a result necessarily following from the manner in which he treated the case. Twice the counsel interposed, and once took an exception, and it is to be regretted that the court did

not then perceive that he had inadvertently committed an error.

Under the circumstances, justice requires a new trial.

SHERWOOD and CHAMPLIN, JJ. concurred.