URIAL BARNES v. DAVID MUNRO, WILLIAM NEENAN, AND JOHN McQUEEN.

*Resulting trusts—Execution against holder of legal title.*

Where land is paid for by one party, and at his request a deed is executed to another party, whose sole agreement is to convey to the party making such payment whenever requested, no use or trust arises in favor of the payor, but the title vests in the grantee; citing How. Stat. § 5569; *Shafter v. Huntington*, 53 Mich. 310.

Appeal from Kent. (Grove, J.) Argued April 18, 1893. Decided June 1, 1893.

Bill to enjoin the sale of land on execution. Defendants Munro and Neenan appeal. Decree reversed, and bill dismissed. The facts are stated in the opinion.

*Maher & Salsbury,* for complainant.

*Myron H. Walker,* for appellants.

GRANT, J.    The defendants Munro and Neenan° are
judgment creditors of one Thomas B. Haynes.   Execution
was issued upon the judgment, and placed in the hands
of defendant McQueen, who was sheriff of Kent county.
He levied upon the land here in controversy.   Complain-
ant thereupon filed his bill to enjoin the sale of the land,
and decree was rendered in his favor.

He alleges in his bill that he is the legal and equitable
owner of the land; that the entire N. E. ¼ of the N. W.
¼ of section 17, township 10 N., of range 10 W., was
formerly owned by the City Bank of Battle Creek; that
prior to May 28, 1885, he and his mother arranged with
Haynes to purchase the same for them, and agreed that
a devision should thereafter be made between them; that
Haynes purchased the premises, received a conveyance
thereof, and agreed to and with complainant and his
mother to make a conveyance of the same to them, as
they should agree upon and request of him; that complain-
ant took possession of the land for himself and his mother,
has since had possession, made improvements, and paid
the taxes; that December 15, 1890, for the purpose of
carrying out his agreement, Haynes executed and delivered
to each of them a deed, intending to convey to complain-
ant the east half and to his mother the west half of the
land; that a mistake was made in the description of the
land in the deed to him, by which it was located in the
north-east quarter of the section instead of the north-west
quarter; that the execution was levied January 15, 1891;
and that, after the levy, complainant discovered the mis-
take, and thereupon Haynes executed to him a deed giv-
ing the correct description.

The defendants, in their answer, deny some of the
material allegations of the bill, and as to others leave

complainant to his proofs. They aver that they had no notice at the time of the levy that any person other than Haynes claimed any interest in the land; that Haynes obtained credit on account of the ownership of said land, and the title thereto being in him; that he became insolvent, and that the conveyance was made to hinder, delay, and defraud his creditors; that he was not only the apparent, but the real, owner of the land; and they claim the benefit of a demurrer to the bill.

The evidence on the part of the complainant shows that the entire purchase price was paid by complainant and his mother; that the purchase price was $215, of which $115, the amount paid in cash, was furnished by Mrs. Barnes, the mother; that a contract was made between the bank and Haynes in 1882; that the other $100 was paid by complainant and thereupon, in 1885, the bank executed the deed to Haynes; and that Haynes, after the deed to him, had executed a mortgage upon the land. Complainant, when asked why the deed was taken in the name of Haynes, testified:

" Because it was undivided land. My mother and me bought it together, and she didn't know what part she wanted. I was willing that it should be taken in his name. I supposed it would be in his name until we got ready to divide it."

After the levy was made, and on June 22, 1891, complainant made an affidavit, in which he said:

"I bought the land through Thomas B. Haynes, agent. *    *    * The deed from the bank went directly to said Thomas B. Haynes, and through money affairs, etc., it so remained, although I had paid for it, had possession, and paid the taxes. *    *    * Said Haynes never had a cent in the land, and it has been mine wholly since I bought of the bank through him."

July 19, 1891, Haynes made an affidavit, in which he said:

"I bought the land on a contract, and when the deed was made I had it given to me as agent for convenience connected with the business. While thus in my name I mortgaged it once by Mahala Barnes' request and for her. That mortgage she paid. * * * I never owned the above property at all, and have not, nor never had, a cent in it except as their agent. * * * The property was theirs from the first, and they arranged and re-arranged as to which 20 acres each would have."

On June 22, 1891, Mrs. Barnes also made an affidavit, in which she stated that she paid for the land through Haynes, and said:

"The deed of said premises above described, for convenience at the time and afterwards, was taken in the name of my son, Thomas B. Haynes, agent."

It is clear that no fraud or deceit was practiced by Haynes upon complainant or his mother, and that there was no mistake; that they paid the entire consideration; and that, with their knowledge and consent, the deed was executed to Mr. Haynes, and the legal title remained in him by their consent for nearly six years. Haynes executed the deed to complainant without his request, and after suit had been commenced against him by defendants Munro and Neenan. Complainant's own evidence brings his case clearly within the statute in regard to resulting trusts, which reads as follows:

"When a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance." How. Stat. § 5569; *Shafter v. Huntington,* 53 Mich. 310, and authorities there cited.

Complainant's counsel seek to bring this case within the authority of *Putnam v. Tinkler,* 83 Mich. 628. But the difficulty in the present case is that Haynes had no verbal contract with complainant which could be taken out of

the statute by either full or part performance. He had paid nothing. His supposed ·beneficiaries had paid the entire purchase price before the deed was made to him. They owed him nothing. No condition was left unperformed by them upon the performance of which he was to make the deed. The title was taken in him by their consent, and for their convenience. His sole agreement was to convey to them whenever requested. Possession would have formed no defense to an action of ejectment brought by Haynes, nor furnished the ground for relief in a suit in equity brought by complainant against Haynes to compel a conveyance to him. In *Putnam v. Tinkler,* Horace Dodge, the father, had paid the entire consideration for the land, and took the title in himself. He agreed to convey it to his son upon payment to him of the purchase price. The son took possession, paid the purchase price to his father, and fully performed the contract. There is no similarity in the facts of the two cases. In the former case there was a parol contract to be performed by the contractee, the performance of which brought the case without the statute, and entitled the party to a specific performance. In the present case complainant had no contract with Haynes imposing any conditions upon him upon the performance of which he was entitled to the deed.

At the time the levy was made the legal title was in Haynes, and the defendants Munro and Neenan obtained a lien upon the land. Their rights cannot be affected by the subsequent conveyance by Haynes to complainant by which he attempted to carry out a trust which could not be enforced either in law or in equity.

Decree reversed, and bill dismissed, with costs of both courts.

The other Justices concurred.