PURCELL *v.* PURCELL.

HUSBAND AND WIFE — CONVEYANCE TO WIFE — ABANDONMENT BY WIFE—RESCISSION—FRAUD.

A conveyance of land made by a husband to his wife without consideration, no fraud being shown, will not be rescinded because the wife subsequently deserted him and refused to return on the ground that he had contracted and communicated to her a venereal disease.

Appeal from Ingham; Wiest, J. Submitted June 30, 1910. (Docket No. 89.) Decided July 14, 1910.

Bill by George E. Purcell against Katherine Purcell to set aside a deed on the ground of fraud. From a decree dismissing the bill, complainant appeals. Affirmed.

*S. B. Roe* and *J. E. Nichols*, for complainant.

*L. B. Gardner*, for defendant.

MOORE, J. This is a sworn bill of complaint filed for the purpose of having a deed made by complainant to defendant set aside. From a decree dismissing the bill of complaint the case is brought here by appeal.

The parties were married in January, 1900. The complainant was in possession of 115 acres of land under a land contract. This land was deeded to him in 1901, subject to a mortgage of $2,700, and a claim of $265. After the marriage the parties lived upon this land. Later they lived in Webberville, then in Williamston, where they lived until April, 1906, when they removed to Lansing, where they were living at the time defendant left complainant. While living at Webberville in 1905, complainant for about three weeks was in the insane asylum at Kalamazoo. He was discharged because he was regarded as cured.

The substance of the stating part of the bill of complaint is as follows:

" Your orator further shows unto the court that up to and for some time previous to the middle of March, A. D. 1907, said defendant insisted and prevailed upon your orator to convey by deed the above-described lands to said defendant. That your orator thereupon told said defendant that the lands remaining in his name as they then were would be of as much benefit to her as they would if they were deeded to her in her name, that they were for the benefit of both, and that it would serve no beneficial or substantial purpose to convey from your orator said lands unto said defendant, but notwithstanding your orator's explanation in this regard said defendant still insisted that your orator convey the same by deed unto her, she assigning as a reason for your orator deeding and conveying said lands to her that your orator might again in the near future become mentally unbalanced, and while in that condition he might make some deal or bargain with reference to said lands not in keeping with strict business principles as practiced and performed by so-called business men, and that, if he continued rational, she would in the course of a short time deed and convey the same back to your orator. That she would be more at ease and more satisfied if he would convey said lands to her as aforesaid; finally, for the purpose of gratifying said defendant and putting her mind at ease, your orator did on or about the 12th day of March, A. D. 1907, convey lands by deed unto said defendant and without consideration of any value from said defendant to your orator, your orator thinking when he so deeded to her that he was gratifying said defendant's wishes and that it would make no material or substantial difference to him or to her, as he then expected and well hoped and supposed and assumed that your orator and said defendant were to continue to live together in a pleasant and peaceable manner, as is becoming a husband and wife, and that the benefits and enjoyments derived from said lands were to be shared and enjoyed by and between the parties hereto, and that in the course of a few weeks said defendant would become satisfied of the permanent rationality of your orator and redeed said lands back to your orator.

" Your orator further represents unto the court that immediately after the conveyance by deed of the said lands

by your orator unto said defendant as aforesaid, she, the defendant, represented and pretended that she desired to go to visit her relatives living near the village of Williamston and while there to take some medical treatment of a local physician in the village of Williamston, and that she would return home in the course of a few days thereafter; whereupon said defendant did go to her relatives near the village of Williamston as aforesaid, but has never returned to live with your orator as your orator expected and well hoped she would do. That your orator, after waiting for a period of about nine days from the time she so went away on said visit as aforesaid, went down to where she was staying near the village of Williamston to see what was the cause of her staying away from their home so long without informing your orator, and when he thus went and saw her she then told him for the first time that she was not intending and did not intend to live with him any longer, and that she was not coming back to him nor to his home in the city of Lansing, where they were living at the time she so went away as aforesaid. Your orator then told her that he could not understand why she so refused to live with him and why she would not return with him to his home in the said city of Lansing, whereupon she told your orator that she absolutely refused to live with him longer, and that since she had procured the deed and conveyance of the said lands it suited her far better to leave him and live separate and apart from him. That your orator prevailed upon and used all reasonable persuasion to have said defendant return to his home and live with him as his wife, but that, on the contrary, she absolutely and wilfully refused so to do, and still wilfully refuses to return and live with your orator.

"That at the time said defendant was persuading your orator to deed and convey said lands to her, your orator believed that said defendant was bona fide and in good faith in her representations to your orator, and that her purpose was honest, and that she intended to live with him as his wife, and that she would redeed to your orator the above-mentioned lands as she had promised your orator to do, but, on the contrary thereof, the defendant at the time she so persuaded your orator to convey said lands to her was not in good faith, and her representations to your orator were not bona fide and honest in that regard, and she did not intend to live with your orator as his wife at any time after she was able to procure a deed

and conveyance of said lands, but wantonly and fraudulently did she represent and pretend to your orator that she was apprehensive as to his mental condition, and was wanton and fraudulent in conducting herself in a manner to lead your orator to believe that she intended to live with him, and was wanton and fraudulent in procuring the deed and conveyance of the said lands unto herself, and that when she procured said deed and conveyance unto herself as aforesaid, and during the time that she was persuading your orator to deed the same, she was not intending and did not intend to live with your orator, in the event that she was successful in procuring a deed and conveyance unto herself of the lands as above set forth. That the said lands were all the property that your orator owns, and is the only property that he has on earth."

Defendant answered the bill of complaint. Among other things stated in the answer is the following:

"She denies she insisted or otherwise persuaded said complainant to convey the land to her. That for reasons unknown to this defendant at the time of said conveyance, said complainant was extremely anxious to make a conveyance to this defendant. That she did not become aware of his reasons for making said conveyance until after the deed was actually drawn, executed, and delivered, after which said complainant said he conveyed the land to her for the express purpose of defeating his creditors. And then said: 'Now they can all go to hell,' that he would not pay any of them anything. This defendant alleges the truth to be that said complainant was a poor manager, unthrifty, and a person constantly in debt. That she fears, believes, has good reason to believe, and therefore charges the truth to be, that if he had not conveyed said premises to this defendant he would have had nothing. She denies that she ever promised to reconvey the land to said complainant. She denies that she told said complainant that it made no material or substantial difference to him or to her in the event that he made said conveyance to her. (But she avers that she did not, at the time of said conveyance, know of any reason why it should make any material difference between them.) She admits that shortly after the conveyance of said land to her she told said complainant that 'she desired to go to visit her relatives living near the village of Williamston, and while there to take some medical treatment of a local

physician in the village of Williamston;' that she expected to return to her home shortly after her departure from the said city of Lansing.

"She avers and alleges the truth to be that she was not, at the time she was residing in the city of Lansing, and up to the time that she started to the village of Williamston to consult the local physician there, aware of her true condition. That she learned upon her consulting with her physician at Williamston that she was suffering from a most loathsome venereal disease. That after she learned of her true condition and knowing that she contracted said disease from said complainant, and then knowing that said complainant had a loathsome disease, she then refused and has always steadfastly refused from such time to return to the city of Lansing and live or cohabit with said complainant. She admits that she informed said complainant that she did not intend to live with him any longer. This defendant denies that she refused to tell defendant why she would not live with him longer. She avers the truth to be that she did tell him that she had contracted a venereal disease from him; that because of his diseased condition, and because she had contracted the said disease from him, she would not live with him longer.

"She denies that at the time she received said deed as aforesaid, that she had formed any intention to quit said complainant or not live with him. She denies that she ever told said defendant that because of his mental condition she was afraid that he would be unable to take care of said property, or by reason thereof she wished a conveyance to herself."

The case was put at issue by proper pleadings and was heard in open court. The circuit judge filed a written opinion in which he stated that he could not find that the deed was procured by fraud or undue influence. At the time the deed was made complainant was about 39 years of age, and defendant was 12 years younger. There is no claim that his mind at that time was clouded. There is nothing in the record to show that he did not understand fully the legal effect of executing and delivering the deed. There were three children born to the parties, two of whom died in infancy. The oldest one is now upwards of nine years of age.

We agree with the learned circuit judge that complainant has failed to establish that the deed was procured by either fraud or undue influence. We also think he has failed to show that there was an agreement to reconvey the property to him. We are satisfied that defendant expected to continue to live with complainant when the deed was made, but it is equally clear that she did not know at that time that complainant had a loathsome disease which he communicated to her. We are satisfied, also, that the cause of defendant's going home was because she was ill, and that she first learned from her family physician that she, too, had a loathsome disease, well advanced. She testified this disease was contracted from the complainant, and that it was because of this fact that she refused to return to him. We think she testified to the truth in this regard. Complainant has himself to blame for the failure of defendant to return to him, and to continue in her relationship as his wife.

The trial judge made a proper decree under *Jackson* v. *Cleveland*, 15 Mich. 94 (90 Am. Dec. 266), and *Wipfler* v. *Wipfler*, 153 Mich. 18 (116 N. W. 544, 16 L. R. A. [N. S.] 941). See, also, *Draper* v. *Brown*, 153 Mich., at page 133 (117 N. W. 213)..

The decree is affirmed, with costs.

BIRD, C. J., and OSTRANDER, BROOKE, and BLAIR, JJ., concurred.