## JUDD v. JUDD.

1. EQUITY—NOTICE—TAKING PROOFS IN OPEN COURT.

    Where complainant failed to give the statutory notice to take proofs in open court, the court might order the same upon his own initiative, under 1 Comp. Laws, § 211 (3 Comp. Laws 1915, § 12034), and Circuit Court Rule 25.

2. DIVORCE—PROPERTY RIGHTS—SETTLEMENT.

    While ordinarily property rights are adjusted in divorce proceedings, where this is not done they may be settled later in a separate proceeding.

3. SAME—LACHES.

    And where no change in the situation of the parties called for an application of the doctrine of laches, complainant was not barred from obtaining a settlement in a proceeding brought two years later.

4. TRUSTS—CONVEYANCES—HUSBAND AND WIFE.

    In proceedings for the cancellation of a conveyance from a husband to his wife, if the conveyance was voluntary the husband was not entitled to relief even though a parol trust was annexed.[1] 3 Comp. Laws, § 8835 (3 Comp. Laws 1915, § 11571).

5. SAME—FRAUD—EQUITY—DIVORCE.

    But where the record shows that at the time the conveyance was made complainant was deceived and misled by defendant into the belief that she intended to continue in the marriage relation with him, while in fact she intended to secure a divorce as soon as convenient, which she later did, it was a fraud upon him and he was entitled to equitable relief. STONE, C. J., and OSTRANDER and BROOKE, JJ., dissenting.

### ON REHEARING.

6. SAME.

    Former opinion affirmed, distinguishing *Wipfler* v. *Wipfler*, 153 Mich. 18 (115 N. W. 544), where the fraud, if any, occurred after a voluntary conveyance, while in the case at bar the conveyance was induced by fraud.[1] STONE, C. J., and OSTRANDER and BROOKE, JJ., dissenting.

[1]For authorities passing on the question of marital misconduct of one spouse as avoiding gift by other spouse, see note in 35 L. R. A. (N. S.) 124. And as to effect of conveyance of real property from husband to wife, see note in 69 L. R. A. 379.

Appeal from the superior court of Grand Rapids; Stuart, J. Submitted June 16, 1915. (Docket No. 59.) Decided July 21, 1916. Rehearing granted September 27, 1916. Reargued October 27, 1916. Former opinion affirmed December 21, 1916.

Bill by George H. Judd against Peternella Judd and another for the cancellation of certain conveyances, for an accounting, and for other relief. From a decree for complainant, both parties appeal. Affirmed.

*Richard C. Goodspeed* and *Fred P. Geib,* for complainant.

*Gleason & Lee* (*M. L. Dunham* and *Henry E. Chase,* of counsel), for defendant.

BIRD, J. While George and Peternella Judd were husband and wife, he deeded to her certain real estate in the city of Grand Rapids. Subsequently, on account of ill health, he went to Florida, and there engaged in business. While there, defendant Peternella sought and obtained a divorce from him in the Grand Rapids courts. In the divorce case no alimony was asked or granted. Later complainant returned to Grand Rapids, and instituted these proceedings, praying for a cancellation of the conveyances, for an injunction restraining her from disposing of the property, and for an accounting of her management of the property. The defendant Ellis, being interested in some of the property which is in question, was made a party. The chancellor after a very full hearing granted complainant a decree for $5,000 in lieu of his interest in the real estate. The decree pleased neither party, and both have appealed. It appears from the record that the Judds were married in January, 1887, and that following this for 20 years they resided in the city of Grand Rapids. They appear to have gotten along rea-

sonably well in a domestic and financial way. He appears to have accumulated some means from his own business efforts, and that, added to what he inherited, found him in 1908 worth, as the court finds, about $12,000. This was mostly invested in Grand Rapids real estate. The complainant was afflicted with asthma, and in the early winter of 1908 his malady drove him to seek a milder climate. He went to Florida and found that it agreed with him, and afterwards engaged there in the printing business. The defendant remained in Grand Rapids and looked after the real estate and collected the rents. In January, 1909, complainant found his business in Florida in a precarious condition, owing to differences with his partner, and he was obliged to have money to relieve the situation. He came north and requested defendant Ellis to increase the loan on what was known as the White property from $5,500 to $6,500. This was agreed to by Ellis, but the wife refused to give her consent to the increase of the loan, unless the defendant deeded the property to her. The contract for the purchase of the White property stood in their joint names. The other real estate was owned by them in the same manner. This refusal upon her part caused much discussion between them. They do not agree as to what was said at the time. Complainant's business needs were such, however, that he finally yielded and conveyed to her all of his interest in the real property owned in Grand Rapids. Thereupon the loan was increased on the White property from $5,500 to $6,500, and he returned to the south to take care of his business matters. In November following Peternella filed her bill praying for divorce from complainant, and obtained a *pro confesso* divorce upon the ground of extreme cruelty.

Defendant divides her argument into the following divisions:

(1)  The demurrer to the bill.

(2)  If the demurrer be not well taken, must not the case be decided upon the pleadings alone?  Had the complainant the right to take testimony?

(3)  Laches.

(4)  The evidence and motion to strike out.

1. Inasmuch as the demurrer questions the equity of the whole bill, this ground will be considered along with the other questions.

2. Complainant failed to give the statutory notice to take proofs in open court. 3 Comp. Laws, 10188. When the case came on for hearing, objection was made by defendant to the proofs being taken in open court by reason of the failure to give such notice; but the court, after learning what was involved in the suit, ordered the testimony to be taken. Undoubtedly the complainant had forfeited his right to demand an examination of the witnesses in open court by failure to give the notice within the time prescribed, but his failure does not take away from the trial court the power conferred upon him to make the order upon his own initiative. 1 Comp. Laws, § 211 (3 Comp. Laws 1915, § 12034) ; Circuit Court Rule 25. Several cases are cited by defendant's counsel to show that the trial court had no power to make this order after default of the parties in giving the notice. We do not agree with this construction. The statute opens the way for the parties themselves to demand an examination of their witnesses in open court. The statute also authorizes the rule which gives the court the power to order it upon its own initiative. If we are to say that the court is deprived of this power because the parties have neglected to make the demand, it would render the latter statute and rule of very little force or effect. We think the trial court was entirely within his authority in ordering the testimony to be taken in open court.

3. The doctrine of laches is urged as a reason why complainant should be denied relief. Ordinarily property rights are adjusted in divorce proceedings; but the defendant in her bill for divorce did not ask for any relief in that regard, and no decree was made affecting them. If property rights are not settled in divorce proceedings, they may be later in a separate proceeding. *Meldrum* v. *Meldrum*, 15 Colo. 478 (24 Pac. 1083, 11 L. R. A. 65); *Thomas* v. *Thomas*, 27 Okl. 784 (109 Pac. 825, 113 Pac. 1058, 35 L. R. A. [N. S.] 124, 133, Am. & Eng. Ann. Cas. 1912C, 713); *Hall* v. *Hall*, 9 Or. 452. The record shows no such change in the situation of the parties as could reasonably call for an application of the doctrine of laches. For aught the record shows, the case might as well have been heard when it was as earlier, so far as defendant's equities are concerned.

4. The defendant contends that complainant has not made a case which entitled him to relief; that the testimony shows that complainant made the conveyance with a full understanding of what it meant; and that there was no fraud practiced nor any agreement made, oral or otherwise, which constituted the defendant a trustee of the property for the benefit of their joint use in the future; but that, if there were such an agreement, it was a parol agreement and could not now be enforced by reason of the inhibition of the statute. Section 8835, 3 Comp. Laws (3 Comp. Laws 1915, § 11571). And it is further contended that the testimony brings the case squarely within the following line of authorities of this court, in which the statute referred to has been construed and enforced: *Jackson* v. *Cleveland*, 15 Mich. 94, 102 (90 Am. Dec. 266); *Palmer* v. *Sterling*, 41 Mich. 218 (2 N. W. 24); *Shafter* v. *Huntington*, 53 Mich. 310, 314 (19 N. W. 11); *Bulen* v. *Granger*, 56 Mich. 207 (22 N. W. 306);

*Tiffany* v. *Tiffany,* 110 Mich. 219 (68 N. W. 127) ;
*Chapman* v. *Chapman,* 114 Mich. 144 (65 N. W. 215,
72 N. W. 131) ; *Dyer* v. *Skadan,* 128 Mich. 348 (87
N. W. 277, 92 Am. St. Rep. 461) ; *Wipfler* v. *Wipfler,*
153 Mich. 19 (116 N. W. 544, 16 L. R. A. [N. S.] 941) ;
*Waldron* v. *Merrill,* 154 Mich. 203 (117 N. W. 63) ;
*Purcell* v. *Purcell,* 162 Mich. 404 (127 N. W. 310) ;
*Sherwood* v. *Davis,* 168 Mich. 398 (134 N. W. 463) ;
*Halliday* v. *Basel,* 170 Mich. 489 (136 N. W. 354) ;
*Longe* v. *Kinney,* 171 Mich. 312 (137 N. W. 119) ;
*Crane* v. *Read,* 172 Mich. 642 (138 N. W. 223) ;
*Churchill* v. *Howe,* 180 Mich. 150 (146 N. W. 623).

Complainant's claim is that he was led to believe by
acts and declarations of defendant, at and before the
time of the conveyance, that she intended to continue
the marriage relation with him; that during the days
preceding the making of the conveyance, while he was
endeavoring to obtain her consent to the increase of
the loan, he suggested to her that in the future he
would be obliged to live in the south, and, if she pre-
ferred to separate and divide the property, he, would
consent to it. To this she replied that she never want-
ed a divorce; that she was perfectly willing to live as
they were then living. In that connection, he asserts
she said she believed she could make more out of the
property than he could; that, if he would convey the
premises to her, she would remain in Grand Rapids
and care for the property, improve it, and collect the
rents, and they would have something to fall back
on when they were old. He further states that he
relied upon these declarations and promises, and that
he would not have conveyed the premises to her if he
had known that she intended to get a divorce from
him after he returned to the south. He further insists
that, while making these declarations, she had in mind
to deceive him and to obtain a divorce from him, as
she subsequently did, and deprive him of sharing in

the benefits arising from said property. He insists that it was not a voluntary conveyance, and that what he asks does not conflict with the statute nor the line of cases cited by defendant, but that the testimony brings it within the zone of fraud, which, if established, entitles him to relief in a court of chancery.

These contentions of counsel must · turn upon the question as to whether it can be said any fraud or deception was practiced by defendant in obtaining the conveyance. If the conveyance were a voluntary one, as contended by defendant, complainant is entitled to no relief, even though it be admitted that a parol trust was annexed to the conveyance. 3 Comp. Laws, § 8835 (3 Comp. Laws 1915, § 11571). If complainant is right in his contention that the record shows that he was deceived by the defendant into the belief that she intended to continue the marriage relation with him, and if at the time she made the declarations and promises she intended to secure a divorce from him as soon as convenient, and thereby deprive him of all benefit in the property, it was a fraud upon him, and it is within the power of a court of equity to assist him. *Witbeck* v. *Witbeck,* 25 Mich. 439; *Stiles* v. *Stiles,* 14 Mich. 72; *Dickerson* v. *Dickerson,* 24 Neb. 530 (39 N. W. 429, 8 Am. St. Rep. 213) ; *Meldrum* v. *Meldrum,* 15 Colo. 478 (24 Pac. 1083, 11 L. R. A. 65) ; *Fischer* v. *Fischer,* 245 Ill. 426, 429 (92 N. E. 283) ; *Turner* v. *Turner,* 44 Mo. 535; 21 Cyc. p. 1301.

In *Dickerson* v. *Dickerson, supra,* the parties had lived together as husband and wife for 22 years. Plaintiff owned a homestead of 160 acres on which he resided with his wife. At that time the wife stated to the husband that, as they had no children, the land in case of his death would descend to his heirs, and leave her without a home or means of support. To relieve her anxiety, he, at her instance, conveyed 80 acres of said land, containing the house, etc., to her

through a trustee. Three years later, without any apparent cause, she deserted her husband. He then brought this suit to obtain a reconveyance. The court said:

"That the deed was obtained by the defendant from the plaintiff by reason of the confidence which he placed in her as his wife is clearly shown. The land was still to be occupied as a homestead by both of them. The conduct of the defendant prior to the making of the deed was such as might reasonably have led the plaintiff to suppose that the defendant was satisfied with her condition, and would continue to reside with him so long as they both should live, and by reason of this confidence she obtained the title. Having obtained the property under the implied agreement that the marriage relation should continue to exist and the parties reside together, the defendant will not be permitted to retain property which she acquired from her husband by deceit and imposition. Had the defendant notified the plaintiff before the execution of the conveyance that she intended to desert him, it is very clear that it would not have been made. The conveyance was not voluntary, in the sense that it was executed as the free will of the plaintiff, nor was it a gift. Cases relating to such conveyances, therefore, are not in point.

"A party who, by means of the confidential relations between the parties, by deceit and imposition obtains property of the other, will be compelled in a proper case by a court of equity to restore the same to the party injured. *Huguenin* v. *Vasely,* 14 Ves. 290; *Taylor* v. *Taylor,* 8 How. 200; *Boney* v. *Hollingsworth,* 23 Ala. 698."

A study of the record leads to the conclusion that complainant was misled by her statements, and it is also persuasive that, at the time the conveyance was made, she did not intend to continue the marriage relation any longer than was necessary to serve her purpose.

That defendant should annex such a condition to the request of her husband to raise $1,000 to save his

property in the south is to my mind unnatural. That she should have refused to consent at all, on the ground that it would endanger their Grand Rapids property because of added interest charges, would be natural; but to consent to aid him only on condition that he release all of his interest in the property to her indicates that she desired to get the title for some ulterior purpose. If the loan were increased, the added interest would be the same, whether she owned the property or they both owned it.

Upon cross-examination defendant gave as a reason why she wanted the title, was to prevent plaintiff from coming back every little while and wanting more money and spending it and wasting it. Had this reason for wanting the title been the real one, she would have been content with the title as it was. She was a tenant by the entirety, and complainant could neither incumber nor sell it without her consent, and this she knew. So far as preserving the property, she was in just as good a position to accomplish that with the title as it was before the conveyance was made, as she was afterwards.

In November, 1909, she filed a bill praying for a divorce, upon the ground of extreme cruelty. It is reasonably certain that she had suffered no extreme cruelty from the time complainant went away in January up to the time that she made her application. If she did not want a divorce in January on the ground of past cruelty, she does not make it clear to us why she should want one on that ground in November.

This phase of the case has been discussed very ably by both counsel; but, after having read the last word of the briefs upon this subject, I cannot escape the impression that the complainant never would have conveyed his entire interest in their real estate in Grand Rapids in response to her request, if he had not believed that she intended to continue the mar-

riage relation with him, and permit him to share in the benefits of the property in their old age. It is inconceivable that he would have given away his entire estate in Grand Rapids to raise $1,000 to save property in Florida that was worth much less than what he sacrificed to secure the money. I am of the impression that the chancellor was right in granting complainant some relief.

The chancellor who heard the case gave complainant $5,000 in lieu of his interest in the property. While this is somewhat less than half of the value of the property, undoubtedly the question of divorce and alimony and the fact that she had invested some money in the property by way of repairs, moved the chancellor to fix the amount at that sum. We think this is a very equitable adjustment of the matter.

The decree will be affirmed. No costs will be allowed either party in this court.

KUHN and STEERE, JJ., concurred with BIRD, J.

BROOKE, J. I am unable to distinguish this case from *Wipfler* v. *Wipfler*, 153 Mich. 18 (116 N. W. 544, 16 L. R. A. [N. S.] 941). The decree should be reversed

STONE, C. J., and OSTRANDER, J., concurred with BROOKE, J.

MOORE, J., did not sit.

The late Justice McALVAY took no part in this decision.

## ON REHEARING.

BIRD, J. We do not find that our views have changed as a result of the rehearing in this case. To the statement of facts in our former opinion might be added the further fact that on the occasion when complainant came north in January, 1909, to secure the $1,000 loan

for use in his business in Florida he and defendant made mutual wills.

The reargument which was had has given added strength to our belief that the case is not ruled by *Wipfler* v. *Wipfler*, 153 Mich. 18 (116 N. W. 544, 16 L. R. A. [N. S.] 941). In that case there was no intimation that the wife secured the conveyance by means of fraud and deception. It was conceded to have been a voluntary conveyance. Perhaps some claim was made that her refusal to surrender the deed when her husband afterwards demanded it was in fraud of his rights, but it was not claimed that she acquired it fraudulently. The present case is based upon the theory of fraud and deception, and that by those means she acquired a deed of the premises, and complainant makes it very clear that had she not deceived him as to her then present intention he would not have conveyed it to her. For a valuable case on the question when a misrepresentation of a present intention will amount to fraud, see *Adams* v. *Gillig*, 199 N. Y. 314 (92 N. E. 670, 32 L. R. A. [N. S.] 127, 20 Am. & Eng. Ann. Cas. 910).

The decree of the trial court will be affirmed, with costs of the rehearing to the complainant. No other costs will be allowed.

KUHN, MOORE, STEERE, and PERSON, JJ., concurred with BIRD, J.

OSTRANDER, J. In my opinion this case and that of *Wipfler* v. *Wipfler* cannot be distinguished in principle. The decree should be reversed and bill dismissed.

STONE, C. J., and BROOKE, J., concurred with OSTRANDER, J.