WITT *v.* WITT.

CANCELLATION OF INSTRUMENTS — DEEDS — FRAUD—HUSBAND AND
WIFE.
  Where, in a suit to set aside a deed on the ground of
    fraud, the record shows that defendant, who at the time
    the deed was executed was plaintiff's wife, induced him
    to execute said deed by falsely representing to him that
    she intended to and would remain his true and loyal wife,
    while in fact she intended to and later did secure a
    divorce, the decree of the court below granting the relief
    prayed was justified.[1]

Appeal from Ingham; Carr (Leland W.), J.    Submitted April 14, 1926.    (Docket No. 53.)    Decided October 4, 1926.

Bill by Fred Witt against Alice Witt to set aside a deed on the ground of fraud.    From a decree for plaintiff, defendant appeals.    Affirmed.

*James A. Green* and *Frank L. Dodge,* for plaintiff.
*Jason E. Nichols* and *A. M. Cummins,* for defendant.

BIRD, C. J.    This is a contest between parties who were formerly man and wife, over the title to certain property in the county of Ingham.    The facts are so well stated and the conclusions of law reached by the Honorable Leland W. Carr, circuit judge, are so fully concurred in by us, that we have decided to adopt his opinion as the opinion of the court.    It follows:

"This is a proceeding to set aside a certain deed given by the plaintiff to the defendant on the 21st of August, 1922.    At that time the parties were husband and wife, having been married in the year 1919.

[1]Cancellation of Instruments, 9 C. J. § 26.

It appears that each had been previously married, defendant's first husband having died, and plaintiff having been divorced by his former wife.

"In August, 1922, plaintiff was arrested on a charge of larceny of building materials. Pending his examination on this charge he was released on bond and a few days later was re-arrested on a charge of breaking and entering. Following this second arrest and pending the giving of bail for his release, plaintiff was confined in the county jail. An attorney was engaged to defend him and arrangements for bail were duly made. Apparently, pursuant to a prearranged plan, defendant went to the office of this attorney on the morning of the 19th of August, 1922. While there she suggested to the attorney, in substance, that perhaps the defendant might be induced to deed to her a certain lot that he owned in the city of Lansing. Acting at defendant's request the attorney prepared a deed running from plaintiff to the defendant, covering said property. It appears that another deed covering an adjoining lot had already been prepared by the attorney for execution by plaintiff, it being intended that such deed should operate as a mortgage to secure the attorney for the payment of his fees. With these deeds in their possession the defendant and the attorney referred to went to the county jail and obtained plaintiff's release on bond. It is the claim of the plaintiff that immediately on his release defendant insisted that he execute to her the deed conveying to her the lot referred to. Such action was not, however, taken at that time but plaintiff did execute the deed to the attorney. Thereupon plaintiff and defendant proceeded to their home.

"It is the claim of the plaintiff that defendant constantly importuned him to execute the deed or a deed covering his property, representing to him that she would remain loyal to him; that if he was sent to prison she would resume marital relations with him upon his release; that she would look after the property during such time as he was compelled to remain in prison; and that on his release, she would reconvey to him. On the 21st of August, plaintiff and the defendant went to the office of plaintiff's attorney and there executed a deed covering not only the lot described in the deed as originally drawn at

defendant's request, but also the adjoining lot which, as indicated, had been deeded to the attorney to secure him for the payment of his compensation for services performed and to be performed.    It is the claim of defendant that the execution of this deed was not induced by any conduct or representation on her part but rather was made voluntarily by plaintiff for the purpose of preventing his creditors from seizing the property in satisfaction of their claims.    There is, however, no showing that plaintiff had outstanding debts aggregating any considerable sum.

"On the 13th of September, 1922, plaintiff was arraigned in circuit court, on the breaking and entering charge, pleaded guilty, and his plea of guilty was accepted.    Subsequently and on September 20th, he was sentenced to the Michigan State prison at Jackson for a term of not less than three nor more than fifteen years.

"The property deeded by plaintiff to defendant, in the manner above referred to, was practically all that he owned.    Some time previously a lot had been acquired with money borrowed, either in part or wholly, from plaintiff's brother, and the deed to this lot was taken in the name of the brother.    It is a fair inference, however, that the deed was regarded by the parties concerned as in the nature of a mortgage.    The plaintiff started the construction of a house on this lot, which lot is referred to in the record as the 'East Lansing property.'

"Following the commitment of plaintiff to prison, defendant proceeded with the work of constructing the house at East Lansing.    It appears that she visited defendant once at Jackson, approximately a month after he had been taken there and that she corresponded with him from time to time, the letters so written dealing largely with the details of the construction work.    On various items connected therewith she sought plaintiff's advice.    It appears also that she at first suggested and then insisted that plaintiff should see to it that his brother convey the East Lansing property to her.    This plaintiff declined to do.    The money expended by defendant in connection with the building of the house on the East Lansing lot was derived in the main from the rentals received by her from one of the houses deeded to her by plain-

tiff and also from the rentals of other property that defendant owned and which she had owned at the time of her marriage to plaintiff.   The parties were also owners of a house and lot located on Leslie street in the city of Lansing which had been sold on contract and the vendee made his payments to the defendant, following the incarceration of plaintiff.

"Early in the year 1923, defendant, by letters to plaintiff, indicated that she would obtain a divorce from him unless he complied with her wishes with respect to the East Lansing lot.   Plaintiff then sought to stop the making of payments to defendant under the contract on the Leslie street property.   Following such action on the part of the plaintiff, the attorney who had represented him previously and who then held a deed on one of the lots involved in this case endeavored to procure from plaintiff an assignment of plaintiff's interest under such contract, to serve as security for the payment of the attorney's fees. Plaintiff, however, refused to execute the assignment. Had. he complied with the request, the lot, which then stood in defendant's name, would have been relieved from the obligation imposed by the mortgage security. In other words, the attorney would have been compensated from the proceeds of the contract on the Leslie street property, or rather, from plaintiff's share of such proceeds, and the property in defendant's hands would have been correspondingly relieved.

"On the 12th of May, 1923, defendant signed and acknowledged a bill of complaint in the divorce action instituted by her against the plaintiff.   Said bill was filed on the 17th of May.   The sole ground set forth in the bill was that the defendant therein had been sentenced to imprisonment in the State prison for three years.   The case was brought on for hearing in due time and a decree was granted, divorcing the parties.   The plaintiff in the instant case was at that time still confined in prison.   He entered his appearance by an attorney but no answer was filed in his behalf and he was defaulted for failure to answer. On the 28th of October, 1923, the decree of divorce was duly entered.   No mention was made therein with respect to either the East Lansing property or the property involved in this case.   As to the Leslie street property the parties were declared to be tenants

in common, in accordance with the provisions of the statute. Following the granting of this divorce, defendant, Alice Witt, has remarried. It should be noted in passing that her attorney in the divorce action was the same attorney who had represented plaintiff in the criminal matters against him, above referred to.

"The present action was instituted on the same day that the decree of divorce was signed and entered. On the 27th of August, 1924, plaintiff was released from prison on parole. Both parties to the case have been witnesses on the trial and each was examined at length. As might be expected from the nature of the case and from the present situation of the parties, various charges and countercharges have been made. Testimony has been offered tending to show that defendant's conduct, beginning at a period shortly after plaintiff's commitment to prison, was unbecoming to a married woman. With such conduct we are not concerned except as it tends to throw light on the intention of the defendant at the time of the transaction involved in this case, and also tends to explain her attitude towards the plaintiff. Certain testimony of doubtful competency has been offered and has been received subject to objection. Some uncertainty as to the exact theory on which counsel for plaintiff was proceeding was partly responsible for this situation. All such testimony appearing on the full record as having been improperly received has been disregarded in the determination of the question at issue.

"As a reference to the record will indicate, the testimony has been somewhat extensive. A discussion of the details thereof and a consideration of the various charges and countercharges that have been made, would serve no useful purpose at this time. The crucial question at issue, as I view it, is whether the plaintiff was, as he claims, induced to execute the deed of August 21, 1922, because of false and fraudulent representations on the part of the defendant. The general nature of plaintiff's contentions along this line have been heretofore indicated. Attention has also been called to the fact that defendant denies any misrepresentation on her part and claims that the sole, or, at least the principal reason for the execution of the conveyance, was an attempt to defraud plaintiff's

236—Mich.—11.

creditors. As tending to rebut this claim it is significant that the deed was prepared, in the first instance, at the instigation of the defendant and before any discussion with reference to it had been had with the plaintiff. The deeding of the property was clearly defendant's idea. Had the purpose thereof been to defeat any claims that plaintiff's creditors might have brought, it seems inconceivable that such action would have been taken without procuring the advice of counsel as to whether, by deeding to his wife, plaintiff could accomplish such results. No claim is made, however, that either plaintiff or the defendant made any inquiry of the attorney along this line, nor does it appear that he offered them any advice in the premises.

"Is plaintiff's claim, that he was induced to execute the deed by fraud and misrepresentation, including the making of promises that the defendant did not intend to keep, sustained by the proofs? It seems certain that the plaintiff, when he executed the deed, expected that his then wife would remain loyal to him and would resume marital relations with him after he had undergone the punishment for his offense. It is inconceivable that he would have conveyed practically all of his property to her had he not believed that she would continue as his wife, rather than seeking a separation from him through the medium of a divorce action. The record discloses that plaintiff's first wife had obtained a divorce from him following his conviction of a similar offense. He claims that defendant said to him, not once but several times, that she would not do as his former wife had done, but that she would continue as his wife. I am impressed from the testimony that these representations were made by defendant as claimed by the plaintiff. I find from the evidence that she represented to plaintiff that she would be and remain loyal to him; that she would resume marital relations with him following his release from prison; that if he would convey the property to her she would conserve it for both of them; and that upon his release his property interests would be restored to him.

"This brings us to the question as to whether there was fraud on the part of the defendant in making the representations that it is hereby found that she actually made. Admittedly, no relief could be granted

if the conveyance were purely a voluntary one, untainted by fraud or deception, even though an attempt to create a parol trust was made.   On the other hand, if the defendant, at the time she made the declarations and promises to the plaintiff, did not intend to fulfill them, then, if plaintiff relied on such statement and promise (as he did), he is entitled to relief on the theory that a fraud was perpetrated on him and that from the consequences of such fraud equity should grant relief.

"In judging of the intent that the defendant had in mind at the time of the transaction in question, we must, of necessity, look to the attendant facts and circumstances as fairly disclosed by the record.   Did she actually intend at that time to remain loyal to the plaintiff and to resume marital relations with him after his release?   Did she intend to reconvey to him his property interests and to arrange matters so as to enable them to continue in their domestic life as they had previously done?   Clearly defendant's conduct is at variance with any such intention.   The conclusion cannot be avoided, in my opinion, that the defendant, at least from the time that she procured the preparation of the deed on the 19th of August, 1922, desired and intended to obtain all the property that plaintiff had.   Her conduct negatives the idea that she had any appreciable love or affection for him. It negatives the idea that she had any concern for his welfare or for any object other than the accomplishment of her own purposes.

"The testimony indicates that the conduct in which she indulged very shortly after plaintiff was committed to prison was highly reprehensible.   It is scarcely conceivable that if it was her intention on the 21st of August, to remain a dutiful and loyal wife to plaintiff, she would so shortly have indulged in conduct indicating an opposite intent.   Her insistence with reference to the conveying to her of the East Lansing property is also significant.   Her request was not that it be conveyed to plaintiff or to plaintiff and herself jointly, but rather that it be transferred to her in order that it might become her property.   As soon as she was convinced that she could not obtain her desires in this respect she cast aside any semblance of affection for, or interest in, the plaintiff and started her proceeding

to sever their marital relations. The facts established by the record bring the case within the principles enunciated and applied in *Judd* v. *Judd*, 192 Mich. 198, and the cases cited therein. See, also, *Brison* v. *Brison*, 75 Cal. 525 (17 Pac. 689, 7 Am. St. Rep. 189); *Feeney* v. *Howard*, 79 Cal. 525 (21 Pac. 984, 4 L. R. A. 828). As a result of the fraud perpetrated on him plaintiff executed the deed to the property in question. The consideration that he expected to receive has entirely failed and equity should grant relief.

"A decree will enter for the plaintiff in accordance with the prayer of the bill."

The decree will be affirmed, with costs to plaintiff of both courts.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.